181 So. 487

SKLAR OIL CORPORATION v. STANDARD OIL CO. OF LOUISIANA (SABINE STATE BANK & TRUST CO. et al., Interveners).

No. 34578.

April 4, 1938.

Rehearing Denied May 2, 1938.

Isaac Abramson, of Shreveport, for appellant.

Ben R. Miller, of Baton Rouge, and R. A. Fraser, of Many, for appellees.

PONDER, Justice.

This is an appeal from a judgment in favor of intervenors on an intervention filed in this suit.

The facts pertinent in this decision are as follows, viz.: On June 11, 1932, J. H. Reeves secured an oil and gas lease from the Sabine State Bank & Trust Company on 280 acres of land owned by the bank. For the sake of brevity we will hereinafter refer to this lease as the Reeves lease. The consideration of this lease was the payment of $500 and on the discovery and production of oil the payment of $2,800 to be paid out of an equal one-eighth of seven-eighths of the first oil or gas marketed from the land. On June 22, 1932, Reeves transferred an undivided one-fourth interest in this lease to W. M. Knott for the consideration of $125, and on the same day Reeves transferred another undivided one-fourth interest in the lease to J. H. McNeely for the consideration of $125. On June 30, 1932, Reeves, Knott, and McNeely transferred their interest in the lease to William Helis in so far as it applied to 40 acres of land, described as the SW¼ of the SW¼ of section 28,

township 8, range 11 W., for the consideration of the payment of $5,000 in event oil or gas is discovered or produced from the 40 acres of land, to be paid out of an equal one-eighth of the first oil produced and marketed therefrom. Helis transferred certain interests in the contract to a number of different parties. A well was drilled on the 40 acres of land which produced oil. Some time thereafter W. M. Knott was appointed receiver on the application of Reeves and others to operate the well until there could be a liquidation and settlement among all parties concerned and particularly until all claims for materials, etc., had been paid. Some time thereafter Knott resigned as receiver, and on April 9, 1934, V. O. Lusby was appointed receiver. On October 16, 1934, the receiver applied to the court to sell the Reeves lease, in so far as it applied to the 40 acres of land, and all the equipment on the 40 acres, alleging: That it was impossible to operate the well profitably since it could not be operated to produce oil in paying quantities; that he had made every effort to make the well produce in paying quantities but to no avail; that the lease and receivership was heavily involved in debt, both privileged and ordinary, and the cost of the receivership has not yet been paid; that since it is impossible to operate the well at a profit, it is necessary that the lease, well, and appurtenances be sold; that on account of the lease and receivership being so involved no purchaser would be willing to acquire the lease and other property unless it was sold free of all liens and incumbrances, interest and claims, and that the interest of the parties should be relegated to the proceeds of the sale; that the lease should be sold free and unimcumbered; that all parties having recorded interests and claims which appear to affect it should be given a hearing in order that they may oppose the sale if they so desire; and that certain parties own or claim a fractional interest or other rights in the lease and property sought to be sold, naming the parties having interest as Reeves, McNeely, Knott, Helis, and various other persons. The receiver prayed that the Reeves lease in so far as it affected this 40 acres, the well, and other property be sold by an absolute title, free and clear of all claims whatsoever, whether by the defendants herein or others with the understanding the rights of all claimants be relegated to the proceeds of the sale without prejudice to their rights. The various defendants, among whom were Reeves, McNeely, Knott, and Helis, were ruled to show cause if any they had why the property should not be sold. Reeves, Knott, and McNeely accepted service of the petition and waived citation and the formal issuance of the petition. On submission of the rule the court on October 24, 1934, rendered judgment ordering the lease and property sold as prayed for. There was no appeal taken from this judgment. In pursuance of the judgment the receiver sold the lease and other property to Morris Siegel for $1,800. The deed to Morris Siegel contains the same provision that was contained in the petition for and the judgment ordering the sale, to the effect that the lease and the property was sold free and clear of all claims, etc., and that all claimants were relegated to the proceeds of the sale. The sale was duly approved and affirmed by the court. Siegel transferred the lease to the

plaintiff on February 3, 1937, for the consideration of $1,000 and it was provided in the transfer that the assignment or transfer included all the interest of the assignor in all the oil heretofore produced or sold from the property and all the oil in storage thereon. Some time prior to the time the plaintiff acquired the lease Siegel entered into a contract with the Standard Oil Company of Louisiana for the sale of the oil and a pipe line was connected to the property. On February 9, 1937, the plaintiff entered suit against the Standard Oil Company for an accounting and for the value of the oil received from the lease alleging that the Standard Oil Company had refused to account to it for the oil so received and had refused to pay it the value thereof. Reeves and McNeely having previously died, the heirs of Reeves, and the heirs of McNeely, W. M. Knott, and the Sabine State Bank & Trust Company intervened in this suit claiming that the Bank is entitled to be paid $634.29, representing the balance on the Reeves lease, and that the heirs of Reeves, the heirs of McNeely, and W. M. Knott are entitled to be paid $5,000, the amount represented in the Helis lease, or so much thereof as may be paid out of the equal one-eighth or found to be accounted for by the Standard Oil Company. The defendant Standard Oil Company admitted that it had refused to account to the plaintiff on account of the many claims and asked that all persons known to be claiming any interest in the fund be impleaded. The defendant admitted that it owed $15,034.54 for oil received from the property and deposited that amount in the registry of the court and asked for judgment relieving it

from liability. Upon trial the lower court rendered judgment in favor of the intervener bank for $634.29 with legal interest until paid, payable out of the deposit made by the defendant and in favor of the heirs of Reeves, the heirs of McNeely and W. M. Knott in the sum of $1,879.32 with legal interest until paid, payable out of the deposit. From the judgment in favor of the interveners the plaintiff has appealed.

In order to determine whether or not the interveners are entitled to recover the amounts claimed it is necessary to interpret the deed from the receiver to Siegel, the judgment authorizing the receiver to sell and the proceedings leading to the judgment. Upon examination of the proceedings instituted by the receiver to have the lease sold, we find that these proceedings sought to sell the Reeves lease in so far as it applied to the 40 acres of land. It is alleged in these proceedings by the receiver that the Reeves lease in so far as it applied to this 40 acres of land and the receivership are heavily involved in debt. The receiver alleged that it was impossible to operate the well profitably and that no purchaser would be willing to acquire the lease and other property unless it be sold free of liens, incumbrances, and claims; that it should be sold by free and unimcumbered title; and that all persons having any interest should be relegated to the proceeds of the sale. The receiver also alleged that persons named in the petition claimed to be either lienholders, creditors, or holders of fractional interest in the lease and that the following named persons own or claim a fractional interest or other rights against the property sought

to be sold, to wit: William Helis, J. H. Reeves, J. H. McNeely, W. M. Knott, and a number of other parties. Reeves, McNeely, and Knott were made parties to these proceedings, and they accepted service and waived citation and the formal issuance of the rule. We take it from these proceedings that the receiver sought to sell the Reeves lease in so far as it affected this 40 acres of land free from all subsequent transfers of interest in the lease. It would be reasonable to conclude that since the well could not be operated at a profit that it would be impossible to secure a purchaser unless it was relieved of some of its burdens. We find that Reeves after having assigned to McNeely and Knott a half interest in the lease joined with McNeely and Knott in executing a sub lease on this 40 acres to Helis calling for the consideration of $5,000 etc., which imposed an additional burden on this particular property. Helis sold various parties an interest in this sub lease. The receiver did not seek to sell the Helis lease, for in that event the purchaser of the lease and well would have to pay the rentals called for in both leases, and it is doubtful whether a purchaser could have been secured. It is clear from the very allegations in the receiver's petition to sell the lease that it was intended to eliminate the additional burden of the Helis lease. All the parties having any interests in the Reeves lease acquired subsequent to the time Reeves acquired the lease from the bank were made parties to the proceedings and ordered to show cause why the Reeves lease in so far as it affected this 40 acres of land should not be sold clear of any interest they might have. They were all before the court and made no opposition to the sale of the lease. The court rendered judgment authorizing the sale, the sale was made, the deed was executed to Siegel, and the sale was confirmed by the court. The proceedings asked that the lease be sold free of interest, the judgment ordered the sale free of interest, the deed recited that the lease was sold free of interest and was confirmed and approved by the court. There was no appeal taken from this judgment and more than one year has elapsed. The judgment is now final and the parties are bound by that judgment. Whatever rights the heirs of Reeves, the heirs of McNeely and W. M. Knott have under the Helis lease would have to be exercised against the proceeds of the sale.

The Sabine State Bank & Trust Company was not made a party to the proceedings by the receiver to sell this lease. There is nothing in the proceedings to show that the receiver even sought to sell the Reeves lease free of the rentals stipulated in the lease in favor of the bank. When the Reeves lease was acquired by Siegel he acquired it subject to all of its provisions. One of those provisions was to pay $2,800 out of a fractional portion of the first oil produced from the 280 acres of land. It would make no difference on what particular part of the 280 acres the oil was produced. It appears that this is the only particular part of the 280 acres that any oil has been or is being produced consequently the bank has the right under the terms of the Reeves lease to look to this production for the payment of the $2,800, in accordance with the terms of the lease.

For the reasons assigned the judgment of the lower court is amended by rejecting the claims of the heirs of J. H. Reeves, the heirs of J. H. McNeely and W. M. Knott. As amended the judgment is affirmed. One-half of the cost of this appeal to be paid by the appellant and one-half of the cost of this appeal to be paid by the heirs of J. H. Reeves, the heirs of J. H. McNeely and W. M. Knott.

LAND, J., absent.