## PATTERSON v. YAZOO & M. V. R. CO. et al.

### No. 1951.

Court of Appeal of Louisiana. First Circuit.

March 22, 1939.

James H. Kilbourne, of St. Francisville, and Carroll Buck, of Amite, for appellant.

E. S. Muse, of St. Francisville, for appellees.

OTT, Judge.

The suit is to recover damages in the sum of $17,124 for personal injuries which plaintiff claims to have received on May 12, 1936, when he was struck by the locomotive of a log train of the Natalbany Lumber Company while the train was being operated over the tracks of the Yazoo & Mississippi Valley R. R. Company in the town of St. Francisville. Both the railroad company and the lumber company are made defendants in the suit, and a judgment is sought against both companies in solido for the above amount.

The railroad track runs through St. Francisville in almost an easterly and westerly direction. It crosses Ferdinand Street at right angles about 200 feet east of the depot. The track is practically straight for several hundred feet in both directions from the depot, but about a thousand feet west of the depot the track curves to the north and begins a rise or grade. The depot is some 20 feet north of the main track, and almost opposite the depot across the track there is the residence of one Ruffin Green, about 20 feet south of the track and connected with the embankment on which the track is built by a platform or gangway leading from the front porch. There is a switch track between the depot and the main line on which there was standing, on the day of the accident, a box car, a few feet east of the depot.

According to the contention of the plaintiff the accident happened in the following manner: he came up to the depot in a car driven by a young colored boy, and the car was parked a few feet east of the depot and behind and to the north of the freight car standing on the side-track; he walked across the track between the depot and the box car toward the front of Green's house for the purpose of talking to him about a business matter; plaintiff stopped on the south side of the track, near the edge of the cross-ties facing in the direction of Green's house and at a distance of about 26 feet from this house; while he was standing there preparatory to talking to Green who was some 200 feet back of his house, he heard the log train coming from the east toward the crossing; he was standing near the rail, but thought he was out of the way of the train; the log train, traveling at a fast rate of speed and without giving any signals, struck him and knocked him 25 or 30 feet down the embankment and against the front porch of Green's house, causing the injuries which he describes in his petition.

The negligence charged against the operators of the train is their failure to stop at the crossing; their failure to ring the bell and blow the whistle, their failure to see plaintiff standing beside the track and their failure to stop the train before striking him, and running at an excessive speed in order to make the grade ahead.

The defense is that plaintiff suddenly stepped from behind the box car standing on the switch track and crossed the main line right in front of the oncoming train, without stopping, looking and listening; that the engineer did all he could to stop the train after plaintiff stepped out from behind the box car and onto the main line in front of the engine, but could not avoid striking him. Defendants deny all charges of negligence, and in the alternative, plead contributory negligence on the part of plaintiff as the proximate cause of the accident.

The case was tried by a jury which returned a verdict in favor of plaintiff for $500 against both defendants. A judgment was signed in accordance with the verdict of the jury, and both defendants have appealed. The plaintiff has filed an answer to the appeal and asked that the judgment be increased to the amount sued for.

Most of the conflict in the testimony revolves around the question of whether plaintiff had crossed the track and was standing on the south side near the edge of the ties when struck by the train, or whether he emerged suddenly from behind the box car into the path of the train. Plaintiff and his counsel insist on the former as the correct state of facts, while the defendants and their counsel claim that the evidence shows the latter to be the true state of facts. There is also a conflict in the testimony as to the speed of the train and the signals given. The jury must have found that the defendants were guilty of negligence and the plaintiff was free from negligence, or else that defendants had the last clear chance to avoid the accident and failed to do so.

Two witnesses, Ruffin Green and the colored boy who was driving the car in which plaintiff rode up to the depot, testified that plaintiff had crossed the track and was standing near the outside rail on the south side and in front of Green's house when the train was approaching the crossing; that the train struck plaintiff while he was standing there talking to Green, or preparing to talk to him. One of these witnesses, Green, says he heard the train blow for the crossing, but did not hear it blow any more until it struck plaintiff, nor did he hear the bell ringing. The colored boy did not see the train when it hit plaintiff as the box car cut off his view. The boy says the train did not blow for the crossing nor was the bell

ringing. Both of these witnesses say the train did not stop for the street crossing and was going at a good speed.

The testimony of both of these witnesses is considerably weakened by a statement they made a few days after the accident and in which they said the plaintiff came from behind the box car in front of the train and had not gotten across the track when he was struck. Both of these witnesses in their statements say that the train blew for the crossing and the bell was ringing. They do not claim that they were misled into signing these statements and make little effort to explain the inconsistency in their testimony and these statements.

As a rule, little weight is given to statements made to claim adjusters after an accident where these statements are made by ignorant colored people and are written out by claim agents and adjusters to bolster up their side of the case, yet, in this case, we cannot see any good reason for entirely ignoring the statements given by these two witnesses immediately after the accident and under circumstances indicating that no persuasion or undue influence was used.

The engineer testified that he blew the whistle for the crossing, started the automatic bell ringing and slowed down for the crossing to about 4 miles per hour, and then began picking up speed for the grade ahead; that plaintiff stepped out from behind the box car when the train was so close to him that he could see only his head and shoulders; that the train was then going from 10 to 12 miles per hour; he grabbed the throttle and put on the brakes and stopped the train within 150 feet after striking plaintiff. He says the bell was ringing and the train was making a great deal of noise.

The fireman says the train slowed down for the crossing and the bell was started ringing; the train then began picking up speed to 10 or 12 miles per hour; that when the engine got about mid-way the box car, the engineer grabbed the throttle and whistle and put on the brakes; there was no one on the track as they approached the crossing; he did not see plaintiff come from behind the box car, but saw him falling in front of the engine and down the embankment on his left side of the engine.

It is impossible from the conflicting evidence to determine just how fast the train was going when it reached the crossing and when it struck plaintiff some 185 feet further on. The speed of the train is estimated by the witnesses all the way from 4 miles per hour when it approached the crossing to 35 miles per hour when it struck plaintiff. Nor are we able to determine just what signals were given, except to say that the decided preponderance of the evidence justifies the finding that the whistle blew for the crossing.

However, our conclusion is that it is not necessary to a decision of this case to decide these controverted questions, as we do not deem it necessary to determine that the defendants were free from negligence in these respects. Whether plaintiff was standing on the south side of the track near the rails as the train approached him from the crossing as he says, or whether he stepped suddenly from behind the box car into the path of the train as the engineer claims, in either case he was guilty of contributory negligence. He admits that he heard the train coming while he was standing on the side of the track with his face toward Green's house. We can hardly think of a situation presenting a stronger case of contributory negligence than for a man to stand on the side of a railroad track and hear a train coming and not keep a lookout for the approaching train. Likewise, if he stepped from behind the box car into the path of the train without looking, it could hardly be claimed that he was not guilty of gross contributory negligence.

So if we concede that the trainmen were negligent in failing to slow down and stop at the crossing, in failing to give sufficient signals of the approach of the train and were running the train too fast under the circumstances, the question then arises, did the trainmen have the last clear chance to avoid the accident after they discovered the dangerous and perilous situation of the plaintiff, or after they should have discovered it by the use of proper care?

If we accept as the facts in the case, the situation as testified to by plaintiff and some of his witnesses that plaintiff had crossed the track about the time the train reached the crossing almost 200 feet away and was standing near the edge of the ties on the south side, then we must conclude that the engineer saw or should have seen, plaintiff from the time he started across the main line until he stopped on the other side of the track, as

308

the engineer had a clear view of the place where plaintiff crossed the main line for several hundred feet before reaching that point. We must further conclude that if the engineer was aware of the fact, or should have known, that plaintiff was going to stop on the south side of the track in a place of danger and was oblivious of his danger, it was the duty of the engineer to use all reasonable means to avoid striking him.

But we can hardly conceive how the engineer would be expected in such a case to know that a man crossing the track and stopping on the edge of the ties with his face at right angles, or nearly so, to the approaching train would not take one or two steps further to the side to avoid the train which he sees or hears approaching, no matter what the speed of the train. On the contrary, the engineer under such circumstances would have the right to assume that such a person would see or hear the approaching train and take a step or two further away from the track and get out of the way. If the law required an engineer to slow down or stop his train whenever he saw a person standing on the side of the track with nothing to indicate that such person was unaware of the approach-of the train, it would be impossible for trains to be operated successfully and on their schedules. Trotter et al. v. Texas & Pacific Ry. Co., La.App., 146 So. 365; Johnson v. Texas & Pacific Ry. Co., 16 La.App. 464, 133 So. 517, 135 So. 114; Tyer v. Gulf, C. & S. F. Ry. Co., 143 La. 177, 78 So. 438.

In the two recent cases of Russo et al. v. Texas & Pac. Ry. Co., 189 La. 1042, 181 So. 485 and Hicks v. Texas & N. O. Ry. Co., 186 La. 1008, 173 So. 745, the Supreme Court held the railroad liable as it found that the engineer and motorman in each of those cases knew, or should have known, that the person on the track in front of the approaching train or motor car was unaware of the danger and should have taken greater precautions to avoid the accident. In those cases the pedestrians were on the track and had their backs to the-approaching train and motor car, and there were other circumstances by which the engineer and motorman should have been aware of the dangerous situation of the pedestrian. In the Russo case the court said: "From all the facts in this case there can be no question that the deceased was unmindful of his perilous situation and the defendant's employee was aware of the fact that the deceased was unaware of his perilous situation." [189 La. 1042, 181 So. 487.]

But, as we have already said, there is nothing in this case to indicate that the engineer was aware, or should have been aware, of any danger or peril of plaintiff, at least until the train was right on him and too close to stop.

If the situation was as recited by the engineer, there is nothing to indicate that he had time to stop the train after seeing plaintiff step from behind the box car. And if it is contended that the engineer should have seen plaintiff when he got out of the automobile and started around the box car toward the main line, the engineer had no reason to believe that plaintiff would walk from behind the box car onto the main line without looking and stopping for the approaching train. The first time that it may be said that the engineer discovered, or should have discovered, the perilous situation of the plaintiff was when he emerged into view from behind the box car, and if the train was then going only 10 or 12 miles per hour the engineer could not have stopped the train in the short time that plaintiff was going from the edge of the box car onto the main track.

We are unable to find any theory under the facts in this case by which either defendant can be held liable for plaintiff's injuries. We might add, however, that if liability were shown the amount awarded by the jury is entirely inadequate, and we cannot help but feel that the jury entertained some doubt as to liability in fixing the award so small in comparison to the nature and extent of the injuries.

For the reasons assigned, the judgment appealed from is hereby annulled, avoided and reversed, and the demands of the plaintiff are rejected and his suit dismissed.