(123 So. 651)

No. 29839.

JARROW v. CITY OF NEW ORLEANS.

June 17, 1929. Rehearing Denied July 8, 1929.

W. J. Carmouche, of Crowley (Edrington & Carmouche, of New Orleans, of counsel), for applicant in writ.

W. McL. Fayssoux, of New Orleans (McCloskey & Benedict, of New Orleans, of counsel), for respondent in writ.

OVERTON, J. This is a suit for damages for personal injuries. The plaintiff, at the time he was injured, was an ordinary laborer, who came to New Orleans a few years ago from one of the country parishes in search of work. Defendant, at the time of plaintiff's injury, was operating, and is still operating, the Public Belt Railroad, which is a railroad connecting with other lines in New Orleans, and is constructed, at least in large part, along the bank of the Mississippi river, and is so constructed at the point where the accident occurred.

██ Plaintiff was injured where defendant's railway passes the Harmony street wharf, the accident occurring between Harmony street and the garbage dump, just beyond Ninth street. At this point there are a number of railway tracks, used by defendant. On the day plaintiff was injured he was engaged in unloading cars on what is known as the house track, which is a track built about three feet from the lap of the wharf. He had just completed unloading a car of staves, when he found it necessary to leave and go to a toilet at the garbage dump. At this time the locomotive, which caused the injuries, was on the levee at Harmony street, at which point it was on a spur track for the purpose of engaging in switching.

The switching of cars at that point was a matter of daily occurrence, and the hour at which the accident occurred was no exception. The track on which the locomotive was, when plaintiff left the car, was connected with the main line at or near the garbage dump, and was perfectly straight. It was often used by laborers on the wharf and others in going to and from the wharf, and especially at the noon hour in going to and returning from lunch, though there were other, and we think safer, though less convenient, means of passage.

When plaintiff left the car he had just unloaded, for the garbage dump, he walked a short distance towards Harmony street to go around a car, and then went directly to the spur. Plaintiff had worked at that point before and must have known that the spur was frequently used for switching. He says that before going on the spur he looked and saw the locomotive stationary on the levee. After entering on the track, he proceeded down it towards the garbage dump, apparently giving no thought to the locomotive, and not once looking behind him.

About this time, the locomotive began backing down the spur towards the garbage dump, propelled, after using steam to start with, by its own momentum, without first sounding a whistle, though, it is said, with its bell ringing. The engineer and the fireman both testified that they were keeping a sharp lookout, but saw no one on the track, though they were in position to see the track from the point of starting to the garbage dump. However, so far as keeping a sharp lookout, they were evidently mistaken. There was a third man on the front of the engine, but, as the engine was moving backwards, he was not in position to see the track in the direction in which the engine was moving, on which end no one was stationed.

After plaintiff had walked on the track some 200 feet or more, the engine struck him, knocked him down, and cut off one of his legs between the ankle and the knee, and so mutilated the other that it had to be amputated at about the same place. The engine, at the time of the accident, was moving about six miles an hour.

Plaintiff, we think, was negligent in walking down the spur track, when he must have known that switching was frequently done on it, and not uncommonly at about the very hour he was then upon it, without looking

back to see whether a locomotive was approaching. He was especially negligent when he knew that, at the very moment he put his foot upon the track, a locomotive was on it only a short distance from him. With his knowledge of that locality and of the switching that daily occurred there, he had no reason to expect that the locomotive would remain there for any length of time, and must have known that it might move either in his direction or from him at any moment. In these circumstances, he should not have walked on the track, and, if he did, it was all the more incumbent on him to keep a sharp lookout for his own safety. On the other hand, defendant's employees were negligent in the manner in which they operated the locomotive, and in failing to keep a sharp lookout. The negligence of both was concurrent to the moment of the accident.

As was said by the Court of Appeal, the facts in this case are strikingly like the facts in the case of Harrison v. Louisiana Western R. Co., 132 La. 761, 61 So. 782. In that case, the person was struck and killed by the train in the outskirts of the city of Lake Charles, while walking absent-mindedly on the main track. The train that killed him was running 15 miles an hour faster than permitted by city ordinance, and with steam shut off. The attention of the engineer was concentrated on a switch engine on another track, and no alarm was given by the sounding of the whistle as the train approached the deceased, for neither the engineer nor fireman saw the deceased walking on the track, though the track was straight. The deceased in that case knew, or should have known, with his knowledge of the surroundings, that the train was due at the time he stepped on the track. The track at the point at which he was killed was frequently used by pedestrians, there being no other passageway there.

The court in that case found, that the presence of the deceased on the track was more or less in the nature of a trespass, and said, in disposing of the case:

"The proposition upon which the learned counsel rests his case that:

"'The defense of contributory negligence will not avail if, by reasonable care on the part of those in charge of the train, the accident could have been avoided'—is correct only with the qualification that the contributory negligence of the person injured has not continued down to the occurring of the accident, or, in other words, been concurrent with that of the defendant at the very moment itself of accident.

"'This so-called exception to the rule of contributory negligence (i. e., the doctrine of "last clear chance") will not be extended to cases where the plaintiff's own negligence extended up to and actually contributed to the injury. To warrant its application there must have been some new breach of duty on the part of the defendant subsequent to the plaintiff's negligence.'" Citing A. & E. E. of L. Supp. vol. 2, p. 64, notes 4 and 5.

The court denied recovery in that case on the ground of contributory negligence.

In the case of Castile v. O'Keefe, 138 La. 479, 70 So. 481, the doctrine of the Harrison Case was approved and applied. In that case, as in this case and the Harrison Case, pedestrians used the railroad track, but the court found that there was nothing in the record to suggest that such use was licensed by the railroad, and denied recovery.

In the present case, we think that plaintiff had no right to enter upon the track, under the facts disclosed, and walk down it. Nor did his supposed license, if it existed, protect him in entering upon the track when he did. Nor do we think that the fact that the track was constructed on the bank of the

river—a public place—which was done with authority, give plaintiff any right to enter upon the track when he did, under the circumstances here disclosed.

The Court of Appeal found that plaintiff should not recover, because of his contributory negligence. While the accident is a most regrettable one, we think the judgment is correct.

For these reasons, the judgment under review is affirmed.

O'NIELL, C. J., and THOMPSON, J., dissent.