## MONK v. CROWELL & SPENCER LUMBER CO., Limited, et al.
### No. 5245.

Court of Appeal of Louisiana.
Second Circuit.
June 2, 1936.

Julius T. Long, of Shreveport, for appellant.

Thornton & Gist, of Alexandria, for appellees Railroad Co. & Guaranty Co.

LeDoux R. Provosty, of Alexandria, for appellee Lumber Co.

HAMITER, Judge.

Isaac Newton Monk died shortly after and as the result of being struck by a locomotive on the Red River & Gulf Railroad in Rapides parish. The death occasioned the filing of this suit by his widow against the alleged owners and operators of the railroad and the insurer of one of them.

All of the defendants excepted to the petition as stating no cause or right of action. From a judgment sustaining the exceptions, plaintiff has appealed.

In giving consideration to the case as presented on the exceptions, we must, of necessity, proceed according to the well-recognized principle of law that the allegations of fact contained in the petition are to be taken and accepted as true. The allegations are numerous and lengthy, and for the sake of brevity, we shall summarize those which are relevant in deciding the issues involved.

The deceased lived about a mile south of the town or place of Sieper, La. On the morning of July 9, 1934, he left his home and proceeded on foot toward that town. He journeyed on the public graveled road some distance, then turned into and traveled a plain trail which ran in an oblique or northwesterly direction for about 150 feet to the railroad track. He stepped upon this track and walked slowly, and in a forward bending position, along the center thereof a distance of about 75 yards, when he was struck by the railroad engine which was pulling a long string of flat and log cars in a northerly direction. The trail on top of the track was visible and led to the stores and business section of the town located a short distance beyond and northwest of the place where plaintiff was killed. The accident occurred about 5:45 a. m. and while the sun was shining.

The engineer and fireman on the engine saw the deceased walking along the track when the locomotive was fully 300 yards from him, and then continuously until he was struck. While at least a hundred yards back of the point where they were when they first saw him, the engineer and fireman repeatedly blew the whistle and rang the bell of the locomotive on account of a crossing and of livestock, and such bell was continuously rung and the whistle blown while the train was proceeding northerly toward decedent. Notwithstanding those noises, the deceased continued walking with his head and upper part of his body bent over and forward, and he took no notice of any sound on or about the train until the engine was within 20 feet

of him, when he apparently heard the racket of the train and the ringing of the bell and blowing of the whistle, and made an effort to jump from the track.

Decedent was 72 years of age, and had the appearance of an aged man to the engineer and fireman when they saw him upon the track. They were acquainted with him long before the time he was killed, and knew him to be slightly hard of hearing. They recognized that he was an old man, not with his full faculties of hearing and quick thinking, walking ahead of the train, soon after they first observed him upon the track, and for fully 200 yards before the train reached him. The engineer observed that the deceased did not look back or make any kind of movement, before he jumped. His back was constantly to the engineer and fireman until the time he was struck.

The train was traveling at a speed of about 30 miles an hour when decedent was first seen, and it thus continued without any effort being made to stop or slow it down until within 5 feet of him. At that speed, it could have been stopped in a distance of 200 feet.

The track had a slight incline or upgrade continuously from a point one mile south of the place of accident to a point one-quarter of a mile north of such place. There were no sudden falls or rises in said track during that distance. Also, it was straight for more than 150 yards south of the collision point, and then, looking in a southerly direction, it curved slightly and gradually toward the southeast.

To the knowledge of the railroad and lumber companies and their employees, particularly the operators of the locomotive, citizens living in and about Sieper frequently walked upon the track in the manner and at the place and time of day that decedent was using it.

The train was being operated at least thirty minutes before the time that it usually passed through the town of Sieper.

From the foregoing summary, it is to be readily observed that decedent was negligent in selecting and employing, as he did, the railroad track as the passageway for his journey. He stands convicted of the grossest kind of negligence when plaintiff alleges: "That the back of deceased was to the said train and engineer for fifty feet before he stepped upon the said track and was constantly to the said train and engineer to the time he was thus struck, and he never at any time looked back nor gave any kind of indication that he heard the said alarms or might get off the said track." If he saw the approaching train while still on the trail, he should have refrained from proceeding upon the track. On the other hand, if he ascended upon and traveled along the track without looking and listening, he likewise breached a legal duty. A railroad track is of itself a warning of danger, and a person traveling thereon is charged with the responsibility of listening and watching for approaching trains in both directions, and his failure so to do constitutes negligence. 52 Corpus Juris, Railroads, § 2216.

Plaintiff asserts, however, that even though her husband was negligent, the proximate cause of the accident was the failure of defendants' employees to stop the train and avoid the accident. She invokes and relies on the last clear chance or discovered peril doctrine for the success of her demands, while defendants deny and resist its applicability to this cause. This appears to be the main issue herein, for in defendants' brief it is stated: "The plaintiff, realizing that the mere contention that defendant was negligent would not suffice, further contended that the defendant had the last clear chance to avoid this accident, and this last named contention is the only issue really before this court." And the oral argument and brief of plaintiff's counsel were devoted almost entirely to that question.

Prefacing our discussion of this much-debated and very controversial principle of law, it may be said that the doctrine of the last clear chance is sometimes declared to be an exception to the general rule that the contributory negligence of an injured person bars recovery, and at other times it is viewed as merely a qualification thereof. 45 Corpus Juris, Negligence, § 540.

Defendants' position and contention herein is that the last clear chance doctrine cannot be applied where the negligence of the injured person continues up to the moment or instant of the accident. Their counsel cite many cases in the jurisprudence of this state, including Harrison v. Louisiana Western Ry. Co., 132 La. 761, 61 So. 782; Castile v. O'Keefe, 138 La. 479, 70 So. 481; and Jarrow v. City of New Orleans, 168 La. 992, 123 So. 651.

There is no doubt that a division of opinion has existed for a number of years

among the members of the bar of this state as to the applicability of the doctrine in factual situations similar to the one here presented, many of whom have held firmly to the position taken by defendants' counsel. However, it appears that there will hereafter be unanimity of opinion on this question by reason of the lucid and enlightening discussion of the doctrine by Justice Odom, in speaking for a unanimous court, in the recent case of Rottman v. Beverly et al., 183 La. 947, 165 So. 153, 155. Although the accident which prompted that suit was caused by an automobile, the author of the opinion throughly reviews and analyzes the leading jurisprudence of this and other jurisdictions, pertaining to railroad collision cases, wherein the applicability of the doctrine was in controversy. After making certain preliminary statements, referring to the Harrison and Castile Cases, and quoting from the Harrison Case, he states:

"It is frequently stated by courts that there can be no recovery in negligence cases 'where it appears that the negligence of the plaintiff continued until the moment of the accident,' but that is not a correct statement of the rule. Thus broadly stated, it is misleading, for it is not true in a strict legal sense that a plaintiff is barred from recovery under any and all circumstances merely because he was guilty of negligence which continued down to the moment of the accident which caused his injury, and this court has never so held."

Then follows a discussion of the Harrison and Jarrow Cases, in both of which pedestrians, while walking on railroad tracks, were struck by locomotives. The persons injured in those cases were negligent in failing to look and listen, while the engineers were negligent in not keeping the proper lookout. It was specifically pointed out that they were not seen by the operators of the locomotives until too late for the stopping of the trains. Referring to these decisions, the court said:

"In those cases the fault of each operated directly to cause the injury. The defendants had no better 'last chance' to avert the accident than did the pedestrians, and inasmuch as the pedestrians could have avoided the injuries by taking proper precautions, and failed to do so, and as their negligence continued down to the accident, they were in no position to invoke in their behalf the doctrine of last clear chance.

"But in those cases if the engineers and others in charge of the engines or trains had actually discovered the peril in which the pedestrians had negligently placed and kept themselves, and after discovering the danger had negligently failed to use such reasonable and available precautions as would, if exercised, have saved the pedestrians from the consequences of their negligence, the plaintiffs might have been entitled to a verdict. This is upon the well-recognized principle that it is the duty of those in control of dangerous instrumentalities to avoid accidents and injuries to others if they reasonably can, even though the party in danger may have negligently placed and kept himself in a position of peril of which he was unaware."

Further in that opinion we find this significant discussion, which clearly describes the circumstances and conditions under which the doctrine is to be applied, viz.:

"Where the danger is brought about by plaintiff's own negligence, but is not discovered by defendant, because of a failure to exercise due care, the parties are on equal footing. Their faults are mutual, their negligence is concurrent. It arises from the same cause, viz., failure to observe. The negligence of each party is a contributing cause of the accident. In such case it cannot be determined whether the negligence of the plaintiff or that of the defendant was the proximate and immediate cause of the injury, and neither party can recover.

"But if a plaintiff negligently puts himself in a place of danger *and his negligence and danger are actually discovered by the defendant,* then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. If they perform that duty *and discover that some one is in danger,* then a second duty arises, and that is to use every possible available means to avert injury. If the defendant fails to perform that duty, *his negligence in that respect is regarded as the proximate and immediate cause* of the injury and the negligence of the plaintiff in putting himself in a place of danger, the *remote cause,*

*In such cases the last clear chance doctrine applies even though plaintiff's negligence continues up to the accident."* (Italics ours.)

In again referring to the Harrison and Jarrow Cases, and also to the Castile Case, the Supreme Court, in the same opinion, observed that in those cases such legal principles were applied as were applicable under the facts of each one; that there was concurrent failure of the plaintiffs and defendants therein to discover the dangers; and that such cases do not support the broad, general proposition that in negligence cases where contributory negligence is involved, a plaintiff cannot recover if his own negligence continued down to the moment of the accident.

And then the following language is used:

"In cases of discovered peril, it is pertinent and material to ascertain whether the defendant could, after discovering plaintiff's peril, have averted the accident by the exercise of due diligence. If he could have averted the accident by the exercise of due diligence and failed to do so, his negligence in that respect is considered the proximate and immediate cause of the injury, and the plaintiff's negligence the remote cause, and the plaintiff may recover although his negligence continued to the instant of the accident. The basis of recovery in such cases is the defendant's superior knowledge of the peril and his ability to avoid the injury. He has the last clear chance. 20 R.C.L. § 116, page 141.

"Of course, there can be no recovery against defendant if he used due care in discovering the peril and after discovering it could not avoid the accident, as in such case there would be no negligence at all on the part of the defendant."

The principle and reasoning enunciated in the Rottman Case by our Supreme Court do not appear to be in conflict with the general rule given in the Restatement of the Law of Torts (Negligence) vol. 2, § 480, regarding the last clear chance doctrine and its relationship to negligently inattentive pedestrians. Therein the rule is stated as:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

"(a) knew of the plaintiff's situation, and

"(b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

In the discussion of that rule, the authority comments:

"Therefore, if there is anything in the demeanor or conduct of the plaintiff which to a reasonable man in the defendant's position would indicate that the plaintiff is inattentive and, therefore, will or may not discover the approach of the train, the engineer must take such steps as a reasonable man would think necessary under the circumstances. If a train is at some little distance, the blowing of a whistle would ordinarily be enough, until it is apparent that the whistle is either unheard or disregarded. The situation in which the plaintiff is observed may clearly indicate that his inattention is likely to persist and that the blowing of the whistle will not be effective. If so, the engineer is not entitled to act upon the assumption that the plaintiff will awaken to his danger but may be liable if he does not so reduce the speed of his train as to enable him to stop if necessary."

Looking now to the jurisprudence of the United States Supreme Court relative to, the issue under discussion, we find the following said in the case of Grand Trunk R. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 687, 36 L.Ed. 485:

"Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; *subject to this qualification,* which has grown up in recent years (having been first enunciated in Davies v. Mann, 10 Mees. & W. 546), that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence." (Italics ours.)

364

Later, in Chunn v. City & Suburban Railway, 207 U.S. 302, 28 S.Ct. 63, 65, 52 L.Ed. 219, that court said:

"Nor is it clear that, even if the plaintiff was not free from fault, her negligence was the proximate cause of the injury. If she carelessly placed herself in a position exposed to danger, and it was discovered by the defendant in time to have avoided the injury by the use of reasonable care on its part, and the defendant failed to use such care, that failure might be found to be the sole cause of the resulting injury."

And more recently, in the case of Kansas City S. R. Co. v. Ellzey, 275 U.S. 236, 48 S.Ct. 80, 81, 72 L.Ed. 259, the doctrine is referred to in this language:

"This language suggests that the Circuit Court of Appeals thought this case to be governed by the doctrine of the last clear chance. That doctrine, rightly applied in the Chunn Case, amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident."

In further support of defendants' position, their counsel have cited numerous other decisions from the courts of this and other states relating to the application of the doctrine. The views given in most of those cases do not conflict with that recited in the Rottman Case for the reason that different factual situations are there involved.

Considering the case at bar in the light of the above discussed and quoted authorities, we feel that the exceptions of no cause or right of action should have been overruled and the case tried on its merits. Of course, we cannot foretell whether or not the evidence, when offered, will suffice to fulfill the conditions precedent, necessary for the application of the doctrine, that the peril of the decedent was discovered by the operators of the train in time to avert the accident, and that they failed to so avert it by the exercise of due diligence. We do think, however, that the allegations of fact, which we have hereinabove recited in narrative form, are sufficiently broad to authorize the introduction of such proof, and that in the in-

terest of justice the case should be remanded for further proceedings.

Accordingly, the judgment of the trial court is hereby reversed, the exceptions of no cause or right of action are overruled, and the case is remanded for further proceedings according to law. Appellees shall pay the cost of this appeal.