## JONES v. AMERICAN MUT. LIABILITY INS. CO. et al.
### No. 16868.

Court of Appeal of Louisiana. Orleans.

May 22, 1939.

Writ of Certiorari Denied July 14, 1939.

For prior opinion, see 185 So. 509.

O'Keefe & Davison and Alex. C. Granzin, all of New Orleans, for appellant.

Holmes & Ferguson, of New Orleans, for appellee Wm. S. Ferguson.

Cyril Dumaine, of New Orleans, for intervenor Charity Hospital.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee American Mut. Liability Ins. Co.

J. C. Henriques, of New Orleans, amicus curiae.

McCALEB, Judge.

Being uncertain of the applicability of the doctrine announced by the Supreme Court in Jackson v. Cook, 189 La. 860, 181 So. 195, to the facts of the instant case and also entertaining doubt as to the correctness of our conclusion that the Supreme Court had held in Jones v. Shehee-Ford Wagon & Harness Co., 183 La. 293, 163 So. 129, that a delay of 26 days in the giving of the notice of an accident was a reasonable time within which to comply with a condition of a liability insurance policy requiring immediate notice, we granted this rehearing.

A careful re-examination of the record makes it imperative to re-state the facts of the case as we are now convinced that some of the findings set forth in our original opinion (See 185 So. 509) are not borne out by the evidence.

Richard Jones died on February 8, 1937, as a result of injuries he sustained on the morning of January 17, 1937, at about 5 A. M. when he was struck by an automobile driven by the defendant, William S. Ferguson, near the intersection of St. Charles Avenue and Felicity Street in the City of New Orleans. Mrs. Ibbie Jones, the deceased's mother, brought this suit to recover damages for the death of her son which she alleges occurred solely as a result of the negligence of Ferguson. The latter and the American Mutual Liability Insurance Company, the alleged insurer of the automobile involved in the accident, are the party-defendants to the case.

The accident occurred on the lake side roadway of St. Charles Avenue a short distance past the Felicity Street intersection. St. Charles Avenue is one of the principal thoroughfares of the City of New Orleans with two paved roadways which are separated by a wide neutral ground. The river side roadway is devoted to the use of traffic proceeding in the direction of Canal Street and the lake side roadway accommodates vehicles being driven the opposite way or towards Carrollton Avenue. Felicity Street crosses St. Charles Avenue at right angles and the movement of vehicular and pedestrian traffic at the intersection is controlled by electric semaphore signal lights which are located upon the neutral ground.

Ferguson's version of the accident is that he had been attending a supper given by a carnival organization following a Ball which was held at the Municipal Auditorium on Saturday, January 16, 1937; that he was on his way home and was driving on the lake side roadway of St. Charles Avenue approximately three feet from the neutral ground, at a speed of 30 miles per hour; that, as he approached the Felicity Street intersection, he noticed that the traffic semaphore, which is situated on the uptown corner of the neutral ground just back of the pedestrian crossing, was green or favorable to him; that there was no traffic in sight; that he crossed the intersection and that, when the front part of his car arrived at a point approximately a few feet past the signal light, he felt the impact of some object which had been struck by the left front fender and headlight of his automobile. He further declares that, up to the time of the collision, he had not previously seen or known that any human being was near the roadway; that, as soon as he collided with the body of Jones, he pulled his car over to the lake side curb of the street, stopping it about a half block from the point where the collision occurred, and that he and his friend, Beale Chambers, who was a passenger in his automobile, immediately went to the assistance of the injured man. He says that, as soon as he reached the body of Jones, which he places as being in the roadway about eight feet from the neutral

ground and approximately fifteen feet from the Felicity Street intersection, an automobile arrived upon the scene and that he and Chambers placed Jones in that car and drove him to the Charity Hospital. He also declares that the left front fender of his car was dented and the left headlight broken as a result of the impact of the automobile against Jones' body.

Beale Chambers supports Ferguson's statement. He says that the Ferguson car was being driven at a speed of between 30 and 35 miles per hour; that he did not see Jones upon the neutral ground prior to the accident; that the intersection was well lighted; that, as the car approached Felicity Street, the semaphore signal was green or favorable to traffic traveling on St. Charles Avenue and that he first saw Jones at the moment he was struck by the car. Chambers believes that Jones must have stepped into the street from behind the traffic semaphore, which is situated past the pedestrian walk, and his conclusion is premised upon the fact that the deceased was struck at a point very near to the neutral ground past the Felicity Street intersection.

In our original opinion, we stated that Jones was in the intersection to the extent of six or seven feet from the neutral ground when he was struck by the right front fender and headlight of the Ferguson automobile. We were mistaken. Ferguson's evidence is that he was driving approximately three feet from the neutral ground and that Jones was struck by the left front fender and headlight of his car. It is true that Joseph Paternostro, one of the two alleged eyewitnesses to the accident produced by plaintiff, stated that Jones had gotten six or seven feet in the roadway when he was struck. But we find that his evidence is unimpressive and that it is in discord with the physical facts of the case. In fact, in our original opinion, we concluded that the evidence of plaintiff's witnesses Aranda and Paternostro was most unsatisfactory and we remarked that, should we decide the case upon their testimony, the defendant would prevail since their assertions made out a perfect case of contributory negligence on the part of Jones. It was therefore in spite of plaintiff's evidence that we found Ferguson guilty of actionable fault on his own version of the accident. In thus resolving, we must accept his testimony as a whole and should not reject parts of his statement in

favor of discarded evidence which is in conflict with it.

It appears that, after Jones regained consciousness at the Charity Hospital, he gave the following statement to the police officers who were investigating the accident: "I would state I had been drinking pretty heavy all night and was under the influence of liquor and about 5:15 A. M., Sunday, January 17, 1937, I was on my way home and was walking across St. Charles Avenue at Felicity Street from the river side of St. Charles Avenue to the lake side *and I stepped into the street and that's all I know of the accident when I came to in the Charity Hospital.*" (Italics ours)

It will be seen from the foregoing that Jones must have been struck at a point very close to the neutral ground and at a time when he had just stepped from a place of safety into the roadway in front of the oncoming Ferguson car. His right leg was badly broken in the accident and it was necessary to amputate it before his death. In addition to this, he suffered a severe cerebral concussion. It is evident from the nature of his injuries that the Ferguson car did not roll over him as would have probably been the case in the event he had been struck by the right or middle portion of the front of the automobile. We mention this because it is somewhat corroborative of the defendants' theory of the accident.

The primary question to be determined in the case is whether Ferguson was at fault. This query can only be answered by considering what he did or what he failed to do in view of the surrounding circumstances.

Plaintiff says that he was negligent because he was speeding and because he failed to keep a proper lookout. Ferguson says that he was traveling at a speed of 30 miles per hour. If this be so, he did not breach the law because the ordinance permits an automobile to be driven on St. Charles Avenue at that rate. On the other hand, Chambers says that the automobile was traveling at between 30 and 35 miles per hour. Should we accept the higher estimate (35 miles per hour) and presume that Ferguson was guilty of a slight infraction of the ordinance, we cannot perceive that his speed had any causal connection with the accident. In other words, it is patent that it does not make the slightest difference whether the automobile

was traveling 30 or 35 miles per hour, as Jones would have been struck in either event. In truth, the underlying and proximate cause of the accident was the deceased's imprudence in leaving the safety afforded by the neutral ground and stepping into the roadway in front of the moving car.

Plaintiff furthermore contends that Ferguson was guilty of negligence because he failed to see Jones standing on the neutral ground when his car approached the intersection. Her counsel argue that, since Ferguson admits that the crossing was well lighted and forasmuch as it is obvious that the traffic semaphore post (behind which Jones was standing) is not wide enough to conceal the body of a human being, he would have seen Jones if he had been on the alert and had been keeping a proper lookout.

We are dubious of the correctness of the contention. While it is true that Ferguson admits that the street was well lighted and that his view was not obstructed, it must be remembered that the accident happened at night and that Jones was not standing upon the paved walk of the neutral ground which is intended for the use of pedestrians. Why should Ferguson be required to anticipate that a drunken negro was standing at a point on the neutral ground somewhere near the corner and that the man would step out into the roadway directly in front of his car? He was traveling upon a right-of-way street and was approaching an intersection where the movement of traffic is controlled by a signal light. The light was green and favorable to him. It has been well said by the Second Circuit Court of Appeal in Buckley v. Featherstone Garage, Inc., 11 La.App. 564, 123 So. 446, 450, that: "Under the traffic light system, a motorist who is proceeding under the proper signal should not be held to that same high degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed, and he is not required to anticipate that pedestrians will violate the ordinances and rules and enter a crossing on the wrong signal. The danger at such crossings is less than if there were no such signals, and therefore, less care is exacted. * * *"

We readily recognize that it is the duty of a motorist to be constantly vigilant and observe the presence of anything which is at or near the path of his travel. But it cannot be said that a motorist operating his car under the conditions obtaining at the time of this accident is negligent because he fails to see a person who is stationed upon the neutral ground near a crossing at a place other than the point where pedestrians usually stand.

Moreover, it has been shown that Jones was wearing dark clothes. This made his presence more difficult to observe. In fact, it is apt to remark that it is a matter of common knowledge to all motorists that it is hard to detect colored people walking at or near street corners in the nighttime notwithstanding the illumination afforded by the City arc lights and the tilted headlights of the car.

We are now firmly convinced that the evidence in this case does not warrant the conclusion that Ferguson was imprudent. We are not permitted to presume that he was negligent. Plaintiff carried the burden of establishing fault on his part by a preponderance of evidence. Not only has she failed in this respect but it is now manifest to us, after a most careful perusal of the record, that the death of Jones was caused solely by his gross negligence in stepping out into the roadway from a place of safety directly in front of the Ferguson car. This was the view of the district judge and we concur in his finding of fact.

Since we think that Ferguson was without fault, it would ordinarily be unnecessary to discuss the applicability of the last clear chance doctrine to the facts of the case. But counsel for plaintiff have earnestly insisted that the doctrine is pertinent and, since our original opinion was founded upon the application of the ruling in Jackson v. Cook, supra, to the facts, we deem it advisable to demonstrate that we are not justified in holding that, in view of the surrounding circumstances of the accident, Ferguson had a last clear chance to avoid the collision. Of course, in discussing this phase of the matter, we must necessarily presume, for the sake of argument, that Ferguson was not on the alert and that he was negligent in failing to observe Jones at the time his car was approaching the crossing. By indulging in this presumption, we found in our original opinion that the case fell within the rule announced in Jackson v. Cook, supra, by concluding that, if Ferguson had seen Jones prior to the impact, he would have

noticed that the latter was in a drunken condition. To substantiate the result, we observed [185 So. 514]: "If he [Jones] was as drunk as the district judge found him to be there must have been something about his movements to indicate it. He must have walked with slow, uncertain and wavering steps across the intersection and into the path of the rapidly moving Ferguson car."

We now believe that we erred in assuming that, because Jones was drunk, he was walking slowly and that, if Ferguson had seen him prior to the impact, he would have been apprised of his drunken condition. There is no evidence in the record which authorizes such an assumption. The mere fact that it was discovered after the accident that Jones was drunk neither justifies the conclusion that he was staggering near the roadway prior to the mishap nor is it sufficient to establish that, if Ferguson had seen him on the neutral ground, he would or should have become aware of the deceased's infirmities. Certainly no witness to the accident has declared that Jones was obviously drunk or that he walked into the roadway with "slow, uncertain and wavering steps". On the contrary, no one saw Jones prior to the collision except plaintiff's witness, Paternostro, and he says that, when he saw Jones at the pedestrian crossing, he was apparently all right, there being nothing about him which would indicate that he was drunk. Hence, there is nothing to show that, if Ferguson had actually discovered the presence of Jones prior to the impact, it would have been obvious to him that the deceased was drunk. For this reason alone, the case is clearly distinguishable from that of Jackson v. Cook, supra.

In the cited case, it appeared that Jackson, while walking on the side of a country road, was struck and injured by defendant's automobile going in the same direction; that he was walking on the wrong side of the road and was drunk and staggering; that, just prior to the accident, Jackson had been seen by the occupants of a passing car to be staggering along the road and had been advised by them to get off the road and that he wobbled to the shoulder and proceeded on his way. It was under these conditions that the defendant's minor son approached from the rear at a speed of 20 to 25 miles per hour and ran into the plaintiff. The driver of the car did not see the plaintiff until he was within five feet of him, although he could have seen him staggering in the roadway directly in front of the car. In the district court, there was judgment in favor of plaintiff, the trial judge being of the view that, notwithstanding the fact that the plaintiff was guilty of gross negligence, the defendant's son should have seen him staggering and wobbling on the road in front of him in time to stop the car and avert the accident. On appeal, our Brethren of the First Circuit reversed the judgment and found for the defendant. See Jackson v. Cook, La.App., 176 So. 622. The decision was based upon the holding of the Supreme Court in Rottman v. Beverly, 183 La. 947, 165 So. 153, it being the view of the judges that, in order for a negligent defendant to be liable to a negligent plaintiff, under circumstances such as were there presented, it must be shown as a fact that the negligent defendant actually discovered the perilous position of the plaintiff within sufficient time to prevent the accident and that he failed to do so. The Supreme Court thereafter granted writs of review in the case. After hearing on the writs, it reversed the decision and reinstated the judgment of the district court in plaintiff's favor. It observed that the Court of Appeal had misconstrued the reasoning upon which the decision in Rottman v. Beverly, supra, was founded and declared that, in deciding the Rottman case, it neither intended to, nor did it, rule that, in order for a negligent plaintiff to recover from a negligent defendant, it must always appear that the defendant actually discovered the peril of plaintiff within sufficient time for him to avert the accident. The opinion quotes approvingly from the Rottman case as follows [189 La. 860, 181 So. 197]: "The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger."

With respect to the foregoing statement, the court declared:

"This makes it clear enough, we think, that we did not intend to, and did not, set aside the well-recognized and settled rule that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due

diligence does not absolve them from liability.

\*    \*    \*    \*    \*    \*

"The only difference between the Rottman Case and the case presently before us is this: In the Rottman Case Mrs. Rottman was guilty of gross negligence which continued up to the moment of the accident. Beverly, the driver of the automobile, actually saw her in her perilous position in time to avert the accident had he used proper precautions. In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, *but could have seen, plaintiff in his peril if he had been looking ahead.* The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. The Rottman Case is not authority for holding that, merely because the driver of the car in this case did not actually see the plaintiff, the defendant is not liable." (Italics ours)

The ruling in Jackson v. Cook, supra, is the last expression by the Supreme Court on the last clear chance doctrine. Prior to Rottman v. Beverly, supra, it was generally believed that the doctrine was inapplicable to cases where the plaintiff was guilty of active negligence which continued up to the moment of the accident. See Jarrow v. City of New Orleans, 168 La. 992, 123 So. 651, and Harrison v. Louisiana Western R. Co., 132 La. 761, 61 So. 782, and other cases. But it was also well recognized that, where the plaintiff, although primarily guilty of negligence, had gotten into a perilous position from which he could not extricate himself due to his physical condition or otherwise, the defendant, who should have seen him had he been exercising proper vigilance, was nevertheless liable if he had a last clear chance to avert the accident. In the last mentioned instance, the plaintiff's negligence was regarded as having become passive. In the Rottman Case, the Supreme Court stated that it never had been its intention to limit the application of the doctrine to cases where the plaintiff's negligence had become passive and that, where it appears that the defendant actually discovered the plaintiff in peril in sufficient time to avert injury, he would not be permitted to escape liability by pointing to the fact that the plaintiff was guilty of contributory negligence which continued up to the moment of the accident. Recently, in Jackson v. Cook, supra, the court has expanded the view set forth in Rottman v. Beverly, supra, by declaring that the reasoning of that opinion should not be construed to mean that it intended to relieve the defendant of the duty of always exercising a proper lookout and that, in case the defendant should have discovered the plaintiff in a position of peril and failed to do so, he cannot be permitted to rely on the plaintiff's negligence, which continued up to the moment of the accident, as a bar to recovery. But we do not understand that the court meant to make the duty of a motorist to see a pedestrian more onerous than it would otherwise have been, in case he had actually seen the plaintiff prior to the accident. In other words, if there was nothing about the plaintiff's position or physical condition to indicate that he was in danger, it is immaterial whether the defendant saw him or not. The paramount inquiry must therefore always be—whether the defendant, if he had been maintaining a proper lookout and had seen the plaintiff, would have observed that the latter was in a position of peril.

In Jackson v. Cook, supra, if the defendant's minor son had observed Jackson at the time he should have seen him, he would have promptly discovered that Jackson was staggering drunk, since the evidence conclusively exhibited that the plaintiff was wobbling on the shoulder of the road within the immediate vicinity of the point the automobile would pass. The Supreme Court declares that, under those circumstances, it will not allow a defendant to be exonerated from negligence, by setting up as a bar to plaintiff's recovery that the plaintiff was guilty of active negligence which continued to the moment of the accident. But the opinion does not say (and it cannot be interpreted to mean) that, if a defendant could have seen a negligent plaintiff and did not observe him, the former will be liable to the latter where there was nothing unusual about the plaintiff's appearance at or near the roadway or where the plaintiff's movements were not such as to lead a reasonably prudent man to believe that he was in imminent danger.

Applying this rule to the facts of the case at bar, it is clear that there is no room here for the application of the doctrine of last clear chance. It is true that Jones

was drunk at the time of the accident. But there is nothing to exhibit that, if Ferguson had seen him standing back of the semaphore post prior to the time he stepped into the roadway, he (Ferguson) would or should have noticed or realized that Jones was drunk and that, for that reason, it would be necessary for him to take exceptional precautions. In the absence of evidence, we cannot presume that Ferguson, if he had seen Jones, would not have been justified in believing that, in view of the fact that he was traversing the intersection on a favorable signal, the deceased would remain in his place of safety on the neutral ground. To resolve otherwise would be to effectively abolish the doctrine of contributory negligence in this State and hold that the driver of a motor vehicle is the insurer of the safety of the lives and limbs of all pedestrians.

We therefore conclude (1) that Ferguson was without fault and that the accident happened solely through Jones' negligence in stepping directly into the path of the automobile which had preempted the intersection on a favorable signal light and (2) that, assuming that Ferguson was imprudent in failing to see Jones standing on the neutral ground prior to the accident, the contributory negligence of the deceased operates as a bar to plaintiff's recovery. Being of this view, we find it unnecessary for us to discuss the responsibility of the American Mutual Liability Insurance Company, codefendant in the case, on its insurance policy other than to say that we entertain serious doubt that it is liable in any event, since Ferguson, who was fully aware of the fact of the accident and of the possible responsibility of himself and of his insurer, failed to notify the company of the occurrence until 25 days after it had happened.

It is therefore ordered, adjudged and decreed that the original decree of this court be and it is recalled and annulled and it is now ordered that the judgment appealed from be and it is affirmed at plaintiff's cost.

Original decree recalled. Judgment of the trial court affirmed.

WESTERFIELD, Judge (dissenting).

The prevailing opinion in this case holds that the defendant, Ferguson, was without negligence in connection with the killing of plaintiff's son, Richard Jones, and then indulges in a prolonged dissertation, admittedly obiter, devoted to a discussion of contributory negligence and the doctrine of the last clear chance, principally concerned with an attack, more or less violent, upon the original opinion in this case. As I was chiefly responsible for that opinion, having in fact been the author of it, perhaps, I may be pardoned for attempting to defend it for I still have an abiding faith in its correctness.

It is said that the statement in the original opinion to the effect that Jones' drunken condition must have been apparent to Ferguson because "he (Jones) must have walked with slow, uncertain and wavering steps across the intersection" is gratuitous because "there is no evidence in the record which authorizes such an assumption". Well, everybody concedes that Jones was drunk when struck by the Ferguson car. This includes all the lawyers on both sides, the trial judge and all three of the judges of this Court. Let us glance at the record in an effort to find some justification for the assumption that Jones was obviously drunk. The accident happened at five-thirty in the morning and Jones, in an unconscious condition, was conveyed to the Charity Hospital. When he regained consciousness he was asked by the police to give an account of the accident. His reply was "I had been drinking pretty heavy all night and was under the influence of liquor * * * and that is all that I know of the accident". The hospital record shows that Jones, after the sobering effect of the fatal accident, was under the influence of liquor "alcoholism". The trial judge remarked that "the evidence shows overwhelmingly that the negro who was killed was drunk * * *". Here we have a poor drunken negro in the throes of impending dissolution, walking "in the valley of the shadow of death", who blames no one for his predicament, makes no self-exculpating statement, but with his soul burdened by the contemplation of the night's debauch seeks only the relief of the confessional and in expiation unbosoms himself by saying, "I had been drinking pretty heavy all night". What stronger evidence could be produced than that which fell from the quivering lips of this humble soul, who disregards all pain and suffering incident to his mortal wound, and gives no explanation of the accident except such as is involved in his self accusing confession of drunkenness. How did it happen? Why did it happen? Who is to blame? The answer is, "I had been

drinking pretty heavy all night". Poor Jones, he would have the world he is soon to leave know of his last great transgression for his burden is greater than he can bear.

If it be conceded that any drunken man staggers, it is a presumption juris et de jure that Jones was staggering. It may be that some drunken men do not stagger, perhaps, it can be proven that they do not, but they are in the class of the three-legged woman and the two-headed calf. Staggering is one of the symptoms of drunkenness and if the record did nothing more than prove that Jones was drunk, I would say that if he attempted to walk he would stagger. This is the view apparently entertained by the Psalmist, for in speaking of the experience of those who "go down to the sea in ships", he says: "They reel to and fro, and stagger like a drunken man, and are at their wit's end."—Psalms CVII–27.

One of the major prophets declares: "The earth shall reel to and fro like a drunkard * * *".—Isaiah XXIV–20.

In the lamentations of Job, we find: "They grope in the dark without light, and he maketh them to stagger like a drunken man."—Job. XII–25.

So that as long ago as Moses or Solomon, both of whom are credited with the authorship of the Book of Job, and the "Gospel according to Isaiah" and the "sweet singer of Israel", the fact that a drunken man staggers had passed into a proverb. That it has ever since been one of the most conspicuous manifestations of complete intoxication is the well-nigh universal conviction. Without any empirical knowledge on the subject, I feel as did Solomon, Moses, Isaiah and the author of the Psalms of David that it is axiomatic that a drunken man staggers.

I respectfully dissent.