The plaintiff, George Leo Butler, instituted this suit against the defendants, Mr. and Mrs. William S. Oswald, seeking recovery of $3,900 for the personal injuries he sustained on November 19, 1937, consisting principally of a fracture of his right ankle, when he came in contact with an automobile owned and being driven by William S. Oswald.
He alleges that the accident resulted from the negligence of defendant in that he was struck down from the rear whilst walking on the left hand side, on the Harmony Street wharf, proceeding towards Louisiana Avenue, and at a time when the defendant was operating his car at a high and dangerous rate of speed in violation of traffic regulations within the sheds along the Mississippi River front as fixed by the Board of Port Commissioners.
Defendant admits the happening of the accident, but denies any and all responsibility to plaintiff for the injuries sustained by him. He avers that he was proceeding beneath the Harmony Street sheds from Washington Avenue towards Louisiana Avenue at a rate of speed within the limits therein fixed; that he was exercising a proper lookout for pedestrians and vehicular traffic; that as he neared stacks of lumber adjacent to the river side of Harmony Street wharf, the plaintiff darted from behind these obstructions, suddenly and heedless of approaching vehicles, running into the left front fender of his automobile. *West Page 242 
The Charity Hospital of Louisiana, at which the plaintiff received treatment, intervened in the case under the provisions of Act No. 230 of 1932 and claimed reimbursement from the plaintiff and defendants, in solido, in the sum of $114.50 for services rendered by it to the plaintiff.
During the course of the hearing, the trial judge sustained an exception of no right and no cause of action filed by Mrs. William S. Oswald relieving her of liability. There was judgment in the district court in favor of defendant, dismissing plaintiff's suit, from which he has appealed.
The questions presented for review are chiefly ones of fact. The record discloses that the accident occurred at about 1 o'clock p.m., beneath the Harmony Street sheds paralleling the Mississippi River, a roadway or ramp approximately 20 to 25 feet wide, permitting one-way traffic from Washington to Louisiana Avenues. It is shown that defendant is employed at the river-docks as a cotton weigher and was then proceeding from Washington Avenue towards Louisiana Avenue in connection with his employment.
Plaintiff's version of the accident is that he was walking on the left side of the roadway or ramp towards Louisiana Avenue; that defendant's car approached him from the rear, traveling at a speed of 30 to 35 miles per hour, on the driver's left hand side of said roadway, striking him in the back and catapulting him in the air and approximately 10 feet forward; that he was rendered temporarily unconscious and was then transported to the Charity Hospital.
In addition to his own testimony, plaintiff produced a co-worker, who, in turn, testified that he was standing about a block away from the scene of the accident and that defendant's car approached and struck plaintiff from the rear, whilst the latter was walking on the river side of the ramp. He fixes the speed of defendant's car at the moment of the accident at approximately 30 to 35 miles per hour.
The defendant, in support of his explanation of the accident, produced two witnesses, negro helpers who were then occupants of his car. The testimony of these witnesses is wholly in accord with that of defendant. They both state that defendant was cautiously proceeding towards Louisiana Avenue, driving in the center of the roadway, at a speed of 8 to 10 miles per hour; that, on reaching the stacks of lumber, piled to a height of 10 to 12 feet, plaintiff bolted from behind one of these obstructions, seemingly chasing a negro; that the first negro escaped being run down due to defendant having applied his brakes, but that plaintiff, without looking or listening for any approaching vehicle, without seeing the automobile driven by defendant, ran into its left front fender. Defendant and his two supporting witnesses declare that the automobile was immediately stopped at the moment of impact, rolling a distance of not over two or three feet; that had not the brakes been originally applied in a successful effort to avoid striking the first negro, assuredly the results of the accident would have been of greater consequence. The record discloses that a witness called by plaintiff fully corroborates the circumstances as detailed by defendant and his supporting witnesses.
The contention of plaintiff that he was struck from the rear and thrown bodily a distance of ten feet from the point of contact is not only thus refuted, but the physical facts, as disclosed by the record, fully absolves defendant from liability. The Charity Hospital report, offered in evidence by plaintiff, clinically details the extent of plaintiff's injuries. Other than a fractured right ankle, the usual attending bruises and abrasions were located on the right side of plaintiff's body. This report shows no scars, bruises, or abrasions on any portion of plaintiff's back. It is evident that, had plaintiff been struck from the rear, as he contends, the marks of physical injury to that portion of his body would have been clearly apparent. We are convinced that the evidence in this case does not warrant the conclusion that defendant was in any way negligent. Plaintiff carried the burden of establishing fault on defendant's part by a preponderance of the evidence. Not only has he failed in this respect, but it is manifest to us that his injuries were caused solely by his gross negligence in running from behind an obstruction into the roadway and that no amount of care on defendant's part could have avoided the accident. Under such circumstances he was guilty of fault having primary and causal connection with the accident, placing himself in such a perilous position that even the use of heroic measures would not have averted contact with his body. This was the view of the District Judge and we concur in his finding of fact. Martinez v. Crusel et al., La.App., *West Page 243 
148 So. 742; Henderson v. Percy, La.App., 159 So. 357; Id.,182 La. 953, 162 So. 739; Jones v. American Mutual Liability Insurance Company, La.App., 189 So. 169; Roberts v. Duracher, La.App., 196 So. 576; Fontenot v. Freudenstein, La.App., 199 So. 677.
Plaintiff's contention that defendant was traveling at a speed of 30 to 35 miles an hour at the time of the accident is not supported by the record. This estimate is based solely on the testimony of one of his witnesses, who was then standing a block away from the scene. This testimony was in the nature of a guess, whilst observing the oncoming car, a method, to say the least, rather unreliable. In contrast, we have the testimony of defendant, the two occupants of his car, and one of plaintiff's witnesses, who fixed the speed of the motor vehicle at 8 to 10 miles an hour at the time of the accident. It is conceded that the speed limit for vehicular traffic beneath the Harmony Street sheds, as fixed by the Board of Port Commissioners, is that of six miles per hour. That the latter figure, as established by evidence of a more reliable character, and most reasonable of belief, was the actual rate of speed of defendant's automobile, the excess, if any, was, we think, very slight. If there was such a technical violation of a traffic regulation, we conclude that it did not form a causative factor.
In Jones v. American Mutual Liability Insurance Company, supra [189 So. 171], we said: "* * * Should we accept the higher estimate (35 miles per hour) and presume that Ferguson was guilty of a slight infraction of the ordinance, we cannot perceive that his speed had any causal connection with the accident. In other words, it is patent that it does not make the slightest difference whether the automobile was traveling 30 or 35 miles per hour, as Jones would have been struck in either event. In truth, the underlying and proximate cause of the accident was the deceased's imprudence in leaving the safety afforded by the neutral ground and stepping into the roadway in front of the moving car."
In Hudson v. Jackson Brewing Company, 4 La.App. 549, we, in discussing the effect on liability of speeds slightly in excess of legal limits, said: "* * * This excess of speed, however, is not sufficient to charge plaintiff with recklessness, and, moreover, it is only of consequence, if it contributed to the accident."
See, also, Belden v. Roberts, 3 La.App. 338, and Ætna Casualty Company v. Lee, 10 La.App. 763, 123 So. 137, 138. In the latter case we said: "* * * It does not appear to us that the speed at which the Kennedy car was being driven was a contributing factor to the accident. It should be remembered that his car was run into from the side by the Lee car, and we do not believe that the fact that the Kennedy car was going 25 miles per hour instead of 15 had any causal connection with the subsequent happening."
In the case of Rutter v. Norman, 189 So. 609, we reiterated and quoted approvingly the pronouncements quoted above.
Plaintiff having left a position of safety and darted from behind an obstruction into the path of defendant's oncoming car, certainly it little mattered that the car may have been operated at 10 to 12 miles per hour instead of at the 6 miles required by the traffic regulations.
When this matter first came up for a hearing in this court, the judgment appealed from was affirmed by us upon motion of counsel for appellee, who invoked Rule VII of the Court. The proper showing having been made, the case was again fixed for argument. On rehearing plaintiff complains, as a ground for reversible error, of the trial court's reliance, in its written reasons for judgment, upon ex parte and hearsay evidence contained in the report of the Charity Hospital of New Orleans. The pertinent part of this report quoted by the judge a quo reads as follows:
"Also the hospital record, which has been offered in evidence, gives the history as follows: `The patient ran out into the street and was struck by an automobile and knocked to the street'."
It is upon the use and consideration of this excerpt by the lower court in reaching its findings that the contention of reversible error is advanced.
The record discloses that the hospital report was offered in its entirety by plaintiff, without objection and without restriction or limitation as to its contents. A reading of the lower court's written reasons indicates that the trial judge, in reaching his conclusions, did not rely to any appreciable extent upon this excerpt, though admittedly considering it. *West Page 244 
Pretermitting the correctness of plaintiff's contention, we have authority, of course, to decide this case on the evidence presented by the record, that is, without considering the documentary excerpt complained of. Whether the other proof in this record would be sufficient in itself to warrant an affirmation of the lower court's decree is a question of fact to be ultimately resolved by us.
The record as submitted, aside from the documentary proof complained of, satisfies us that the accident here involved was unavoidable, and hence, we find no warrant in law to hold defendant responsible in damages.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.