Plaintiff filed motion for rehearing in this case, urging that under the facts as found by the District Court and this court, she is entitled to recover under the last clear chance and discovered peril doctrine as laid down in the case of Rottman v. Beverly et al., 183 La. 947, 165 So. 153, and other cases decided since, citing the Rottman case as authority. Some of these will be mentioned later on in this opinion. Plaintiff's brief accompanying the motion for a rehearing was so impressive that we granted a rehearing.
[1] Further study of the record has convinced us that we were in error origin-ally in agreeing with the lower court that plaintiff was guilty of such contributory negligence as to bar her recovery. We have now concluded that she was guilty of no negligence that contributed to the happening of the accident. This conclusion has been reached after further careful study of the record. All the evidence is to the effect that the two cars parked on the south side of the street extended at most not over four feet on to the blacktop part of the street, which is eighteen feet wide. This left clearance of fourteen feet, at least. Defendant says the cars extended no *Page 384 
more than three feet onto the blacktop, which would leave fifteen feet clearance.
Plaintiff was driving on her right hand side of the street at a moderate rate, not more than twenty-five miles an hour at the most, and after the accident her right wheels were either right on the north edge of the blacktop or just off on the shoulder.
J.O. Hastings, the police officer who investigated the accident, said that plaintiff's car, or the one she was driving, was on its right hand side of the street with the right rear wheel just off the blacktop on the shoulder of the street, and the right front wheel just on the blacktop. He says the shoulder of the street at that point is twelve to eighteen inches wide to the top of the ditch, and at that time the ditch was grown up in grass and weeds.
There is no evidence to show that the car she was driving was pushed north more than a few inches. Taking the evidence of the width of automobiles to be six feet, this would leave eight or nine feet space between her car and the parked cars on the street, and if defendant had been driving at a moderate rate of speed, he would have had no difficulty in passing through this space without causing any accident. The evidence shows that cars did pass each other at the point where the two cars were parked, both before and after this accident. Three photographs numbered 1, 2 and 3, were filed in evidence on behalf of defendant. One of these, No. 2, shows four cars parked abreast on the street at about the scene of the accident. The car on the south side is a little distance off the blacktop on the shoulder and the one on the north side is almost entirely off the blacktop, with its right wheels down almost in the ditch. These photographs were taken long after the accident and do not reflect the condition of the ditches at that time. (Evidence of J.O. Hastings.) We believe this evidence is more favorable to plaintiff than to defendant.
[2, 3] We held in our original opinion that plaintiff was not keeping a proper lookout because of some of her testimony, especially that to the effect that she was not paying any attention to defendant's car as it approached from the west. Further study of her testimony convinces us that we were wrong. What she said was that she was not paying attention to it until it came, as she said, from behind the parked cars, and she then saw that at the rate of speed defendant was traveling, there was danger and she immediately applied her brakes and stopped the car in nothing flat. After the accident her brakes were locked and had to be cut before the car could be moved. Also the testimony that plaintiff spoke to and waved to Clyde Brown influenced us in reaching the conclusion that she was not keeping a proper lookout. Further study of the testimony shows that she was one hundred fifty feet from the parked cars and the scene of the accident at the time she spoke to and waved at Brown, and that she moved slightly to the left at that time and then moved back to the right. She says that after looking at Brown and speaking to him, she turned her attention back to the road. We believe this incident is not sufficient to convict her of negligence. She was driving at a lawful rate of speed and on her right hand side of the street. The obstruction, that is, the two parked cars, were not on her side of the street, but were on the side of the street which defendant was traversing. He, as well as plaintiff, knew that they were there. He saw them long before he reached them. It was his duty to have his car under such control as not to cause a collision at this point.
"Ordinary care on the part of a person operating a car along a public highway in the daytime requires him to observe a plainly visible parked automobile in time to avoid a collision, and the fact that a car stops in plain view of the driver of another car should put him on notice to proceed with caution." 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed. § 1222, p. 361. Ford v. Leonard Truck Lines, Incorporated, et al., La. App., 26 So.2d 309.
[4] We are now convinced that the excessive rate of speed at which defendant was driving was the proximate cause of the collision and resulting damage. His own testimony leads to that conclusion. Of course, we are not convinced that all of *Page 385 
his testimony is correct; at least, that part of it where he says his speed was twenty-five miles per hour. We are convinced that it must have been at least twice that. Witnesses who saw him before he reached the scene of the accident estimate his speed at fifty to sixty miles per hour. Some of them said that he was making all the Ford car he was driving, would make. He does say in his testimony that when he was two hundred feet from the scene of the accident he saw plaintiff wave at someone he did not see, and at that time he saw that she was not keeping a proper lookout and that there would likely be a collision when they met, but he did nothing about it at that time nor indeed until he was from thirty to forty feet from where the collision took place. If he had at the time he was two hundred feet away taken precaution to place his car under control, he could easily have stopped his car or passed through without any danger.
[5] Several witnesses testified that plaintiff said, right after the collision and while she was still sitting in the car waiting for an ambulance to take her to the hospital, that it was her fault, and that if she had not been looking at Clyde Brown but paying attention to the road, she could have avoided the accident. She denies making this statement and says that after the accident she was dazed and does not know what happened or what was said. The witnesses who testified to this were defendant, who is interested in the outcome of the trial, Miss Dorine Skipper, her father, Robert E. Skipper and Mrs. J.W. Gardinia, who appeared to be doing all that they could to help defendant win the lawsuit. We are unable to assign any motive for this except with respect to defendant, who is interested and Skipper and his daughter. Skipper's son owned the Oldsmobile automobile that was parked on the south side of the street and which suffered some small damage in the accident. The evidence shows that Skipper's son was paid either by defendant or his insurer for the damage to the Oldsmobile. This is not an admission of liability, of course, but it may have influenced, to some extent, the testimony of Skipper and his daughter.
[6] Even if plaintiff was rational and knew what was going on, and made the statement that she was to blame, if the evidence shows otherwise, the fact that she made the statement would not bar her recovery.
"Responsibility for an accident is a mere legal conclusion. A party to a collision is not bound by a statement that he does not hold the other responsible." Lowery v. Zorn et al., La. App., 157 So. 826, 829.
The doctor who treated plaintiff for her injuries about an hour after the accident is of the opinion that she was probably unconscious immediately after the accident.
Both plaintiff and defendant pleaded that the other had the last clear chance to prevent the accident, and plaintiff, no doubt, expecting this court to stand by its original finding of fact, predicated her brief on the application for rehearing almost entirely upon that issue. Defendant, in answering the brief, followed largely the same course. Plaintiff is relying largely on the decisions in the cases of Rottman v. Beverly, supra, and Jackson v. Cook, 189 La. 860, 181 So. 195, wherein the Rottman case was discussed and the same rule was followed. The Rottman case has been cited with approval in a number of cases, including Hicks v. Texas New Orleans Railroad Co., La. App., 170 So. 396, which was a case in which the plaintiff walked on the railroad track in front of a small motor car without looking. The Orleans Court of Appeal, discussed the Rottman case, but denied recovery. The Supreme Court granted writs in the case and reversed the Court of Appeal, awarding plaintiff judgment. 186 La. 1008, 173 So. 745.
In the case of Monk v. Crowell Spencer Lumber Co., Ltd., et al., La. App., 168 So. 360, in which exceptions of no cause and no right of action were sustained in the District Court, the Court of Appeal, Second Circuit, overruled the exceptions and remanded the case on the authority of the Rottman case and other cases cited. The case never came up in the appellate courts again.
In the case of Russo et al. v. Texas Pacific Railway Co., La. App., 177 So. 478, the District Court gave judgment which *Page 386 
was reversed by the Court of Appeal, First Circuit, with Judge Dore dissenting. The Supreme Court granted writs in this case and reinstated the judgment of the District Court.189 La. 1042, 181 So. 485.
Williams v. Brown et al., La. App. Second Circuit, 181 So. 679, is another case citing the Rottman case and in which judgment for defendant in the District Court was reversed and judgment rendered for plaintiff. The Supreme Court refused writs in this case.
Iglesias v. Campbell, La. App., 170 So. 265, and on rehearing La. App. Second Circuit, 175 So. 145, is another case in which the doctrine of the last clear chance was applied, citing the Rottman case.
There are a number of other cases in which the Rottman case has been cited, but the above cited cases are sufficient to show that the rule is well established.
Having reached the conclusion that the accident was caused by the excessive speed and reckless manner in which defendant was operating his automobile, prior to and at the time of the accident, further discussion of the last clear chance and discovered peril doctrine would serve no useful purpose.
On the question of the award to be made to plaintiff, she alleges that as a result of the collision, she was severely injured, including a blow to the head and brain concussion, as a result of which she continued to suffer from headaches and dizziness. Her nose was broken and mashed and her head and face disfigured and scarred. Her sinuses give her trouble; her back and lower limbs were injured. Both knees were injured; her left hand was sprained and her body cut and bruised all over.
Dr. H.V. Collins, who treated her for her injuries, probably about an hour after the accident, discussing her condition, said: "I found a woman still in shock though conscious, and could be talked to and understood things; at least, partially; bruises on face, head, fractured nose and one knee — I believe it was the right knee, severely abraded and bruised, suspicious of fracture; the other knee bruised but not so bad. She could not stand to have her feet put on the floor or any pressure on the soles of her feet. * * * She stayed in the hospital a few days. By gradual use she soon learned to begin to use her fect and legs, but for several weeks she couldn't balance herself or walk without danger of stumbling and falling."
He mentions other symptoms and is of the opinion that she was rendered unconscious by the injuries she received and that she had not fully recovered at the time of the trial.
Dr. C.H. Mosley, looking at X-ray pictures made by defendant's doctors, noted a fracture of the tibia, that is, the small bone on the outside of the leg, about one and one-half inches from the knee. He also noted fracture of the styloid process of the temple bone. In another picture he pointed out a fracture of the last rib on the left side and some curvature of the spine. He is of the opinion that plaintiff has suffered permanent disability.
Drs. Bendel and Brown, testifying for defendant, could find no evidence of fracture, except the nose, and they said it was in good position and should give no trouble. They also saw some evidence of a possible duodenal ulcer, but said the injury had no connection with it. They found no abnormality otherwise and were of the opinion that plaintiff had no permanent injury. Dr. Brown is an eye, car, nose and throat specialist and his examination was mostly of the nose and sinuses. He looked at the other X-rays and saw no abnormality. The X-rays are not in the record, but we could not interpret them if they were. We are compelled to accept the interpretation of the experts.
[7] Plaintiff certainly suffered rather severe if not permanent injuries, and no doubt these injuries were painful. We have concluded that an award of $3,000 would do substantial justice.
For the reasons herein assigned, the judgment appealed from is now reversed, and it is now ordered, adjudged and decreed that the plaintiff, Ethel Howze, have and recover judgment against the defendant, Hubert Hollandsworth, for $3,000, with five per cent per annum interest from judicial demand until paid, and for all costs of the suit in both courts. *Page 387