# YOUNG v. THOMPSON.
## No. 1989.

Court of Appeal of Louisiana. First Circuit.
June 6, 1939.

488

afternoon of August 31, 1937. The deceased was walking in a northerly direction in the center of the track about one and one-half miles north of Oakdale when he was struck from the rear by the train which was going in the same direction as was the deceased.

After filing an answer, the defendant filed an exception of no cause or right of action, which exception was referred to the merits by the trial court. The case then went to trial, and after the plaintiff had offered her evidence and rested her case, the defendant re-urged the exception, and in the alternative, moved orally for a judgment in favor of the defendant on the record. The trial court maintained the motion of the defendant for a judgment on the record as he was of the opinion that the plaintiff had failed to show liability on the part of the railroad. Plaintiff has taken an appeal from the judgment which dismissed her suit.

As the defendant again urges the exception of no cause or right of action in this court, we will first consider this exception. In order to apply the well known principle that, in considering exceptions of this kind, all well pleaded facts must be taken as true, we must ascertain what allegations of fact are disclosed by the petition. Following the modern tendency, we must give a liberal interpretation to the allegations of the petition in order to determine whether or not these allegations set out a cause of action.

It is alleged that the railroad track is straight and level for more than half a mile south of the point where the deceased was struck; that the day was clear, and there were no obstructions to cut off the view of the trainmen; that the operators of the train saw the deceased walking down the track ahead of the train some 1,500 feet; that they sounded the whistle and rang the bell when the deceased was first observed, "but that although the deceased, apparently, not hearing the said signals, no effort was made by the operators of said train to bring it to a stop, in order to avoid striking the same (said) deceased, although there was ample opportunity so to do."

It is further alleged that the train could have been stopped after its operators first observed the deceased walking down the track, and that "after the operators of said train gave the signals, as herein-above set out, the said deceased did nothing to in-

Griffin T. Hawkins and J. J. Tritico, both of Lake Charles, for appellant.

Hudson, Potts, Bernstein, & Snellings, of Monroe, and E. R. Kaufman, of Lake Charles, for appellee.

OTT, Judge.

The suit is for damages in the sum of thirty five thousand dollars, one half for the surviving widow and one half for the minor child of Stephen Wesley Young who was run over and killed by a freight train of the defendant railroad company in the

dicate that he heard the signals, or knew that a train was approaching him from the rear."

Without straining these allegations of the petition, but giving them a liberal construction, we think the they can be fairly construed to mean that the operators of the train saw the deceased walking ahead of the train in the center of the track for a distance of 1,500 feet; that the deceased apparently did not hear the signals (no doubt meaning that it was apparent to the trainmen that he did not hear the signals), and the operators of the train made no effort to stop the train (that is after it had become apparent to them that the deceased did not hear the signals), although they had ample opportunity of doing so before striking the deceased; that the deceased did nothing to indicate (to the trainmen) that he heard the signals, or knew that the train was approaching him from the rear.

If our interpretation of the allegations of the petition as summarized above is jusified, then we think the petition does set out a cause of action under the doctrine of last clear chance, or discovered peril, as applied by the Supreme Court in the recent case of Russo et al. v. Texas & P. R. Co., 189 La. 1042, 181 So. 485. Therefore, we think the exception should be, and it is now, overruled.

The answer of the defendant denies any negligence on its part and alleges that the deceased was walking north on its track as a trespasser thereon; that proper signals by whistle and bell were given to attract his attention to the approaching train; that he moved over toward the side of the track, indicating that he heard the signals; that these signals were continuously given, and when the operators of the train saw that the deceased was not going to get off the track, they applied the brakes and did everything possible to stop the train, but the train could not be stopped before it struck the deceased. In the alternative, the railroad averred that the negligence of the deceased in trespassing on the track, in walking along the track without looking and listening, without heeding the signals of the train and without making any effort to get off the track, was the proximate cause of the accident and that this negligence continued down to the moment of the accident.

While the procedure of the trial judge in dismissing the suit of the plaintiff on the record on a motion made by the defendant after the plaintiff had closed her case is rather unusual, if not novel, under our practice, yet we see no objection to such action on the part of the trial judge when he feels that the evidence produced by the plaintiff fails to make out a case. In fact, it would seem to be the proper thing to do in such a case in order to avoid the useless taking of further testimony, where the defendant does not desire, or deems it unnecessary, to produce his evidence. While the effect of such practice might be the same as a demurrer to the evidence, or a peremptory instruction to the jury in favor of the defendant, under the procedure in many other jurisdictions, yet under our procedure the practice rests on somewhat different reasons.

The peremptory exception that operates to dismiss the suit under our procedure is similar in its effects to the various forms of demurrer under the common law procedure. The motion of the defendant for a judgment on the record after all plaintiff's testimony is in the record is in the nature of and somewhat similar to the exception of no cause of action; the former is directed at the insufficiency of the evidence produced by the plaintiff, while the latter is directed at the insufficiency of the petition to set out a cause of action.

Under our Pleading and Practice Act, a litigant may ask for a judgment on the pleadings, without offering any evidence at all. On the same principle, it would seem that where the plaintiff has offered his evidence, the defendant should have the right to ask for a judgment at that stage of the proceedings. The defendant cannot be required to offer his testimony in order to make out a case for the plaintiff. On a failure of the plaintiff to make out a case, the trial court may either enter a non-suit or render a final judgment.

The mode of procedure followed by the trial judge in this case was approved by our Brethren of the Second Circuit in the case of Buttitta v. J. C. Penny Co., Inc., La.App., 164 So. 469. However, we would not want to be understood as holding, as might be inferred from the above case, that the trial judge has the right to render a judgment against the plaintiff on the conclusion of his side of the case and without any motion to that effect on the part of the defendant, and where the defendant desires to produce his evidence.

It may well be that the trial judge is satisfied that the plaintiff has failed to make out a case, but the defendant has a right to put his evidence in the record for the benefit of the appellate court. In this State, unlike the procedure in many other jurisdictions where the demurrer and the peremptory instruction are in use, the appellate courts review the facts in civil cases as well as the law, and the defendant should not be deprived of his right to get his side of the case in the record if he insists on his right to do so.

The plaintiff in this case has made no special objection to the procedure by which her suit was dismissed, but she insists that the trial judge was in error in dismissing her suit for lack of sufficient evidence. We have dwelt on this phase of the case rather extensively because of the action that we have decided to take in the disposition of the case, and in order that our approval of the action of the trial judge in dismissing the suit as he did may not be misunderstood insofar as our opinion may be used as a precedent.

From the evidence introduced by the plaintiff, we think the following facts are substantially proved: the trainmen saw the deceased walking on the track some 1,500 feet ahead of the train; the train operators blew for a crossing when about this distance from the deceased and about 50 yards from the crossing; the train was then going about 30 miles per hour, and slowed down to 20 to 25 miles per hour as it reached the crossing; whistle continued to blow and bell was rung after the train passed the crossing.

The deceased did not turn around or make any move after the signals began to indicate that he heard the approaching train, but he continued walking in the middle of the track with his head bent slightly forward as one in a deep study; he never changed his gait, and there was nothing about his actions to indicate that he was deaf, blind or intoxicated.

Just how far the train was from the deceased when the brakes were applied and an effort made to stop the train is not very clear from the evidence. Only one witness, McNeil, ventured a guess on this vital point. In one part of his testimony, this witness, on being asked how far the deceased was from the train when the whistle began to blow, replied that he was between 200 and 300 yards. A careful study of the testimony of this witness leads us to believe that he meant that the deceased was about that distance from the train when the witness first saw him, as the witness had already testified that the whistle began to blow when the train was about a quarter of a mile from the accident. But the testimony of this witness is made more confusing when he stated that in his opinion, the deceased had walked about 100 yards from the time the witness saw him until he was struck by the train, and then a little further on in his testimony, in answer to the very vital question as to when the engineer began to slow down the train, this witness answered: "Well, about after he blew his whistle a few times and Mr. Young didn't seem to move off the track, he started slowing his engine down, I would think he started slowing down about 250 yards before he struck Mr. Young."

What makes the testimony of this witness so confusing to us is the fact that he says the deceased was 200 or 300 yards from the train when the whistle began to blow, then the deceased walked about 100 yards, and the engineer applied the brakes when he was within 250 yards of the deceased. It is obvious the deceased could not walk 100 yards while the train was going two or three hundred yards. Furthermore, if the brakes were applied 250 yards from the deceased it was almost as soon as when the whistle started blowing. We are sure that the witness was making a sincere effort to fix the distances as he understood them, but he was evidently mistaken in some of his estimates.

Plaintiff does not deny the negligence of the deceased, but she relies solely on the doctrine of last clear chance to support her right of recovery, and contends that, as the trainmen saw the dangerous situation of the deceased when some 1,500 feet from him, and as the deceased gave no evidence of hearing the signals given at that distance, it was the duty of the trainmen to begin slowing down the train in order to be able to stop in case the deceased did not get off the track; that within that distance, the train had ample time to stop and avoid striking the deceased.

The doctrine of last clear chance is an exception to or modification of the rule that contributory negligence on the part of an injured person will bar his recovery. It means that the injured person, although guilty himself of negligence which contributes to the accident, will not

be precluded from recovery if the person causing the injury had the last clear chance to avoid the accident and failed to do so. However, as the doctrine of last clear chance was first developed, it did not apply in those cases where the negligence of the injured person continued down to the moment of the accident—that is to say, the negligence of the injured person and the negligence of the person causing the injury was concurrent, continuing to and converging in the accident—the injured person could not recover under the doctrine, for in that case it could not be determined whether the negligence of the one or the other was the proximate cause of the accident. In that case, the injured person had just as much last clear chance to avoid the accident as the one directly causing it. This principle of the rule, at least insofar as it applies to railroads, is illustrated in the cases of Harrison v. Louisiana Western R. Company, 132 La. 761, 61 So. 782, and Jarrow v. City of New Orleans, 168 La. 992, 123 So. 651.

The condition that contributory negligence would bar recovery if the negligence of the injured person continued down to the moment of the accident was itself modified later so as to permit a recovery on the part of the plaintiff where his negligence continued down to the moment of the accident, if it is shown that the person causing the injury actually discovered the perilous situation of the injured person in time to prevent the accident and failed to do so. This was a natural and reasonable modification for where both parties are guilty of continuing, concurrent negligence the one who discovers the dangerous situation of the other and has it within his power to avoid an accident by the use of reasonable care, should not be permitted to escape liability when he continues his negligent course in the face of his superior knowledge of the dangerous situation in which the other party has placed himself by his continuing negligence.

This is the rule prevailing in some jurisdictions at this time, and it is the rule that we understood was adopted in this State in the case of Rottman v. Beverly et al., 183 La. 947, 165 So. 153. We so understood and applied the rule as announced in the Rottman case in the cases of Jackson v. Cook, La.App., 176 So. 622, and Russo v. Texas & P. Ry. Co., La.App.,

177 So. 478. As to the doctrine in other jurisdictions, see 92 A.L.R. annotations beginning at page 47.

The Orleans Court of Appeal interpreted the Rottman case, as did this court, to mean that in order for the doctrine of discovered peril to apply and render the defendant liable where the negligence of the plaintiff continued down to the moment of the accident it was necessary that the defendant have actual knowledge of the perilous situation of the plaintiff or injured person and thereafter fail to use reasonable care to avoid the accident. Hicks v. Texas & N. O. R. Company, La.App., 170 So. 396.

Apparently such was the interpretation of the Rottman case by the Supreme Court itself in the case of Russo et al. v. Texas & P. R. Co., 189 La. 1042, 181 So. 485, as the liability of the defendant in that case was based on the ground that the engineer of the train which killed Russo was aware of the perilous situation of the deceased and was also aware of the fact that the deceased was unmindful of the approaching train, and the engineer had ample time to stop the train after he actually became aware of the situation.

It appears, however, that our Brethren of the Second Circuit had placed a different construction on the doctrine of last clear chance and when it should be applied, as that court, in discussing the doctrine in several cases, stated that the defendant would be liable under the doctrine if he actually discovers the perilous situation of the injured person in time to avoid the accident, or if by the use of reasonable care he should have discovered the dangerous predicament of the plaintiff and that he was himself unaware of his danger, and fails to do so, the defendant is still liable. Loewenberg et al. v. Fidelity Union Casualty Company et al., La.App., 147 So. 81, and Iglesias v. Campbell, La. App., 175 So. 145.

But the confusion heretofore existing on this point has been cleared up by the decision of the Supreme Court in the recent case of Jackson v. Cook, 189 La. 860, 181 So. 195, where the doctrine has been extended definitely to render a negligent defendant liable to a negligent injured person where the defendant discovered the dangerous situation of the injured person, or should have discovered that danger by the use of reasonable care, in time to avoid the accident and fails to

do so, even though the negligence of the injured person continues down to the moment of the accident. While that case involved a negligent pedestrian as plaintiff and the father of a negligent motorist as defendant, we assume that the rule must be applied to the operatives of railroad trains as well as to motorists and others.

Such being the case, we confess an inability to apply the rule in this case to the operatives of the train without recognizing a modification of the doctrine as it has been applied in other railroad cases, illustrated by the cases of Harrison and Jarrow, already referred to. The reason underlying the refusal to apply the last clear chance doctrine in those cases was the fact that the trainmen were negligent in failing to see the negligent pedestrian, yet as both the engineer and the pedestrian were equally guilty of negligence which continued down to the accident, the former in failing to see the pedestrian on the track in time to stop the train and the latter in failing to see or hear the approaching train and get off the track, it could not be determined whose negligence was the proximate cause of the accident. In other words, it is just as reasonable to say that the pedestrian had the last clear chance to avoid the accident by discovering his peril, or where by the use of reasonable care he could discover it, and fails to do so, and thus avoid the injury to himself, as it is to say that the engineer should discover the peril of the pedestrian where he could reasonably do so in time to avoid the accident.

■ We know of no law that requires the operatives of a train to slow down or stop the train on approaching a trespasser walking on the track a sufficient distance ahead of the train to give him ample time to step off the track. It is the duty of the trainmen to give proper signals and carefully observe the actions and situation of the trespasser, and unless there is something in the actions or situation of the pedestrian to reasonably indicate that he is not a normal human being, that he is unaware of the approach of the train, or is in such a condition that he cannot extricate himself from his danger, the trainmen have a right to assume that the pedestrian will heed the signals of the train and step off the track before the train reaches him, and that he will make some effort to insure his own safety. 52 C.J. 604; Johnson

v. Texas & P. R. Co., 16 La.App. 464, 133 So. 517, 135 So. 114; Patterson v. Yazoo & M. V. R. Co. et al., La.App., 187 So. 305.

We have undertaken to give a rather full discussion of the doctrine of last clear chance because of its importance in a proper decision of this case and others of a similar nature that may follow, as well as to clarify our position in other cases where we undertook to apply the doctrine. Applying the rule, as it has been extended in the case of Jackson v. Cook, supra, and as it was applied in the recent and somewhat similar cases of Hicks v. Texas & N. O. R. Co., 186 La. 1008, 173 So. 745; Monk v. Crowell & Spencer Lumber Company, Ltd., et al., La.App., 168 So. 360, and Russo et al. v. Texas & P. Ry. Company, supra, the vital question in the present case is as to when the engineer should have reasonably become aware of the fact that the deceased Young, did not hear the signals of the approaching train and was unmindful of his danger, and revolving around that question others arise, viz: (1) if the trainmen saw the deceased 1,500 feet ahead when the first signal was given and the signals were continued from that time, how long and over what distance could the train travel before the trainmen should have observed that the deceased did not hear the train and was not likely to get off the track; (2) at what distance from the deceased was an effort begun to stop the train; (3) going 20 to 30 miles per hour, how many feet would have been required to stop this particular train; (4) did the deceased make a motion as though he intended to step off the track, as alleged in the answer?

■ With the evidence presently in the record, we are unable to answer these important questions to our entire satisfaction. We could, under this condition of the record, affirm the judgment for the reasons assigned by the trial judge who found that plaintiff had failed to prove with legal certainty sufficient facts to hold defendant liable. And we might say here that the trial judge had good reasons for the action which he took. Or we could amend the judgment by dismissing the suit as in case of non-suit.

Article 906 of the Code of Practice gives an appellate court large discretion in remanding a case where the record is not in condition to enable the court to pronounce definitely on the case, or where the parties

have failed to produce available testimony which might be material in a proper decision of the case. The present tendency is to exercise this discretion where the ends of justice would be best served by remanding the case for the reception of additional evidence where it appears that either party, or both, may be able to produce further material evidence, regardless of the cause for the omission of the evidence on the first trial. Dreher v. Guaranty Bond & Finance Co., 184 La. 197, 165 So. 711, and Walker v. National Life & Accident Ins. Co., La.App., 184 So. 603.

We do not feel that plaintiff should be deprived of the opportunity of producing further relevant evidence in support of the facts necessary for her right to recover, if she can and desires to do so. And, of course, the defendant railroad is entitled to produce its evidence, if desired, in support of its side of the case. The defendant did not offer its testimony or rest its case as the motion made by it for a judgment on the record did not constitute a closing of its case, and if the trial judge had thought the evidence of plaintiff was sufficient to make out a case for her, the defendant still could have gone forward with its evidence.

For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered that the case be remanded to the district court for the introduction of such additional evidence, relevant to the case, as either plaintiff or defendant, or both, may desire to offer, and in accordance with the views herein expressed; cost to await the final judgment to be rendered herein on the remand of the case, or on the appeal from such judgment.

DORE, Judge (concurring).

I do not assent to that portion of the judgment which states that we could affirm the judgment for the reason "that plaintiff had failed to prove with legal certainty sufficient facts to hold defendant liable." On that score, I am of a different opinion, believing that the doctrine as laid down in the cases of Russo v. Texas & P. Ry. Co. and Jackson v. Cook, cited in the opinion, is controlling; following these decisions, I am of the opinion that plaintiff should recover. I do not assent also to the statement that the defendant, by not offering any testimony, did not close its case. On that score, I am of the opinion that, by the verbal motion for judgment in its fa-vor, defendant closed and rested its case. However, I subscribe to the decree for the reason that under Article 906 of the Code of Practice justice may be better served by a remand.