Plaintiffs' grown son, Melvin Harvey Williams, while asleep and/or drunk on a switch track of the Missouri Pacific Railroad Company on Congo Street in the City of Monroe, Louisiana, at about the hour of 3 o'clock A.M., was seriously injured by a switch engine of the company from which injuries he died a few hours later. Plaintiffs sued the railroad company, Guy A. Thompson, trustee thereof, and Frank Jones, engineer in charge of the locomotive, for damages, against whom judgment in solido is prayed.
The Missouri Pacific Railroad Company is now and has been for several years in bankruptcy. Its affairs during this time have been administered by and under the direction of Guy A. Thompson, as trustee. He was appointed to that position by a federal court. For this reason the suit as against the railroad company is not prosecuted. Issue as to it was not joined.
The negligence, in several respects, of those charged with the operation of the engine, is alleged to have made the accident possible. Defendants, the trustee and Jones, deny articulately all the acts of negligence and carelessness charged to the operatives of the engine, and specially pleaded that decedent's own wanton and wilful negligence brought about his injury and consequent death.
Both sides at length amplified their respective allegations. We deem it unnecessary here to give full epitome of these allegations in view of what we presently conceive to be a proper disposition of this case.
On the issues tendered by the pleadings, the case went to trial. Plaintiffs, after introduction of testimony in chief, rested. Thereupon defendants' counsel filed a motion for judgment upon the face of the record as then made up. Plaintiffs' counsel objected to the filing and/or consideration of the motion, but were overruled. The court proceeded to render judgment rejecting plaintiffs' demand and dismissed their suit. In written reasons for judgment, the court absolved the operatives *Page 81 
from any fault as a contributing factor to the accident. Plaintiffs appealed.
We shall abstain from any comment upon or discussion of the testimony adduced by plaintiffs. The disposition we shall make of the case should not be construed to any extent as reflecting any opinion touching the probative weight of the adduced testimony. The procedural question only has had our attention. At this time its importance overshadows all other questions and issues in the case.
Appellants' contention here is that defendants, by not introducing any testimony and moving for judgment on the face of the record as it existed when plaintiffs closed in chief, also closed the case so far as they were concerned; and urge this court to now proceed to render final judgment in the case. They complain of the trial judge's ruling that they had not, at least, made out a prima facie case.
Appellees defend the trial judge's action in allowing their motion and giving judgment in their favor. They cite and principally rely upon Young v. Thompson, La.App., 189 So. 487, decided by our brethren of the First Circuit, with Judge Dore dissenting in part, as precedent for their action. Judge Dore is of the opinion that by not offering any testimony and moving for judgment when plaintiff closed in chief, the defendant also closed the case as to himself.
We are informed by defendants' counsel that in some of the district courts of this state it is not uncommon for a defendant to proceed as was done in the case at bar and that the practice has received sanction.
Defendants alternatively urge that should this court not be willing to follow Young v. Thompson, and affirm the judgment appealed from, it should be set aside and the case remanded for further proceedings to begin where plaintiff rested.
We find ourselves unable to approve the procedural course followed in Young v. Thompson. We feel certain that it is not supported by any rule contained in the Code of Practice nor by the provisions of the Pleading and Practice Act (Act 300 of 1914). We are of the opinion that if this form of procedure were to be adopted generally, more harm than good would result.
In State ex rel. Sutton et al. v. Caldwell, Mayor et al.,195 La. 507-511, 197 So. 214, 215, when discussing a motion to strike out, the court after holding that such a motion has no place in judicial practice in this state, because not authorized by the Code of Practice, nor the Pleading and Practice Act, said: "* * * and our opinion is that the Code of Practice and the Pleading and Practice Act contain everything that is necessary or useful in the regulation of pleading and practice in this State."
The fourth paragraph of Section 1 of Act 300 of 1914 extends to a plaintiff the right to rule the defendant to show cause why judgment should not be rendered in plaintiff's favor upon the petition and answer. This may be done simply because the law authorizes it. But nowhere is it provided that when a plaintiff rests, after introducing his evidence, defendant has the right to ask the court to render a final judgment upon the record as then constituted. If the Legislature had desired to institute such a practice it could have done so in a few words; and since it has not so acted, it is our view that the courts should not allow introduction of the practice.
In brief, defendants' counsel, not without some logic and much force, advance the following argument in support of their position, viz.: "No Plaintiff, under the law, is entitled to more than his day in Court. No procedural requirements or considerations of justice or fairness require a Defendant to undertake the time, expense or risk, inevitably involved, when Plaintiff's showing is fatally defective, in adducing a defense against insufficiency, or affording Plaintiff an opportunity to eke out of Defendant's witnesses essential prerequisites to his action, which he has failed to himself produce, notwithstanding full and fair opportunity."
In Young v. Thompson, supra [189 So. 489], the court, in defense of its holding anent the motion for judgment, said: "Under our Pleading and Practice Act, a litigant may ask for a judgment on the pleadings, without offering any evidence at all. On the same principle, it would seem that where the plaintiff has offered his evidence, the defendant should have the right to ask for a judgment at that stage of the proceedings. The defendant cannot be required to offer his testimony in order to make out a case for the plaintiff. On a failure of the plaintiff to make out a case, the trial court may either enter a nonsuit or render a final judgment." *Page 82 
The trial judge, of course, is charged with the duty and the task of determining the sufficiency of the proof adduced by the plaintiff in any case before him. His conclusions are not always correct. This is definitely reflected from the numerous reversals of district judges by the supreme and appellate courts of the state. If the rule under discussion should be adopted, every case wherein the trial judge should erroneously enforce it, necessarily would have to be remanded on appeal. This would entail the inconvenience and expense of again taking the case up for trial. Much could happen in the interim of delay. Witnesses might have died or disappeared and in other respects either or both sides could be deprived of material evidence existent at time of first trial. Strategically, their positions could undergo unfavorable changes. In jurisdictions having crowded calendars, much delay would be experienced before the case could again be reached. In cases where time is of the essence, it is easy to visualize the injury, financial and otherwise, that could result from the delay incident to two trials and two appeals.
After the case was argued and submitted here, the defendants filed and now urge exceptions of no cause and no right of action. Exceptions of this character, it has often been held, may be filed at any stage of the suit, even in the Supreme Court, but prior to judgment.
The exception of no right of action, as its title indicates, is leveled at the right or capacity of a plaintiff to institute the suit and stand in judgment. A judgment sustaining such an exception may serve as the basis of a plea of res judicata, because it finally determines the question against which it is directed. This is not invariably true of exceptions of no cause of action. When this exception is directed against the efficacy of the petition and is sustained, without right to amend, and no amendment is tendered, the judgment thereon will be one of nonsuit. However, when the exception of no cause of action is filed after evidence has been introduced on the merits and the evidence is considered along with the petition to determine the efficacy of the exception, judgment sustaining the exception may serve as the basis of a plea of res judicata.
In the present case, plaintiffs possessed the right to sue for damages for the death of their son, but whether they have a cause of action remains to be determined. To pass on the exception of no cause of action would involve a study of the testimony introduced in the case, and, in view of the situation being as herein related, we have decided not to do this. Our primary purpose is to restore the case to the status that existed when plaintiffs closed in chief and thereby allow the introduction of testimony by the defendants and rebuttal by the plaintiffs. Defendants' right to file any appropriate exceptions while the case is on remand will be, of course, unaffected by this judgment.
As defendants relied upon Young v. Thompson, supra, in proceeding as they did below, we think the ends of justice will best be promoted by reopening the case so that they may be afforded opportunity to introduce testimony if they wish to do so.
For the reasons herein assigned, the judgment appealed from is annulled, reversed and set aside, and this case is now remanded to the lower court to be proceeded with according to law and in keeping with the views herein expressed. Costs of appeal are assessed against the appellees; all other costs will await final determination of the case.