The plaintiff, Eddie Bartholomew, appearing individually and on behalf of his minor son, Calvin Bartholomew, brought this suit against Jake, Ignatius and Pecobio Impastato, Mrs. Mamie Impastato, wife of Anthony Cassisa, Mrs. Lena Impastato, wife of James Serio, Mrs. Mary Impastato, wife of Burns Garic, and Mrs. Cecile Lo Cicero, widow of Francesco Impastato, individually and as natural tutrix of the minors Rosalie, Leon and Frank Impastato, seeking a judgment for damages against them, in solido, for the personal injuries sustained by his minor child, when it fell from the second story balcony of the premises which had been leased by the defendants to the plaintiff.
In his petition, plaintiff alleges in substance as follows: That, on August 13th, 1940, and prior thereto, he was a tenant occupying two rooms on the second floor of the premises No. 2707 Chartres Street, which is a tenement or apartment house owned by the defendants; that, on that date at between 5 and 5:30 p.m., his three year old child, Calvin, fell from the gallery of the second floor of the premises to the paved ground below (a distance of about 14 feet); that the fall was occasioned by the defective condition of the balustrade and banisters protecting the gallery; that said balustrade and posts were rotten, loose and defective and that some of the banisters of the balustrade were missing. He avers that, as a result of the accident, his child was seriously injured, sustaining a fracture of the skull (more particularly a fracture of the left parietal bone) which rendered him unconscious for 1 1/2 hours; that he also suffered contusions and bruises about the body generally; that he endured great pain and was confined to the hospital for seven days and, thereafter, for many weeks in his home; that it is believed that the child's nerves and general health are seriously impaired; that his mind is affected and that his injuries are permanent. It is further alleged that the accident was due *Page 702 
solely to the fault of the defendants, the lessors and owners of the property, in that they knew or should have known of the defective and dangerous condition of the balustrade, banisters and posts protecting the gallery; that these defects had existed for a long period of time and that, notwithstanding this, the defendants neglected to have them repaired. Plaintiff prayed for judgment in his own right for the sum of $100 for the medical bills incurred by him for the treatment of his child and, on behalf of the minor for the latter's use and benefit, the sum of $5,000.
In due course, defendants appeared and filed an exception of vagueness and an exception of no right or cause of action. The exception of vagueness was sustained and plaintiff's petition was amended in accordance with the court's order. The exception of no cause of action was referred to the merits of the case and, thereafter, defendants filed their answer admitting the ownership of the property; that the plaintiff and his family were occupying the second floor thereof as tenants and that the child fell from the balcony and sustained injuries. They, however, denied that the accident was attributable to their neglect and, alleging affirmatively that the balcony and the banisters thereof were free from defects and in sound condition, they prayed that the suit be hence dismissed with costs.
The Charity Hospital of Louisiana at New Orleans intervened in the case, seeking a judgment against the defendants for the sum of $54, representing the value of the treatment which it administered to the child as a result of the accident.
The case proceeded to trial on the foregoing issues. After the plaintiff had introduced the testimony of some eight or nine witnesses in support of the allegations contained in his petition and had rested his case, counsel for the defendants renewed their exception of no right or cause of action. The judge, being of the opinion that the plea was well founded because the plaintiff had not proved the allegations of the petition to his satisfaction, sustained the exception and dismissed the suit. Plaintiff has appealed from the adverse decision. The intervenor, Charity Hospital, did not appeal and, hence is not before us.
When the case was called for argument in this court, counsel for plaintiff contended that the judge of the lower court was in error in maintaining the exception of no cause of action on the theory that plaintiff had not sustained the allegations of his petition by adequate proof. Counsel asserted that the procedure adopted by counsel for defendants, in urging an exception at the conclusion of plaintiff's evidence, was tantamount to a motion by defendants for a judgment on plaintiff's evidence, or a demurrer to the evidence; that such procedure is unknown in Louisiana practice and that, while the defendants unquestionably had the right to submit the case for decision on the evidence produced by plaintiff, they could not use the exception of no cause of action to accomplish this purpose and that, therefore, the exception should be overruled and the case remanded for further proceedings. In support of his position, counsel directed our attention to the recent case of Williams et al. v. Missouri Pac. R. Co., La.App., 6 So.2d 79, decided by the Court of Appeal for the Second Circuit, in which a writ of review was refused by the Supreme Court.
Counsel's appreciation of the procedure applicable to civil trials in Louisiana is correct. An exception of no cause of action addresses itself to the sufficiency in law of the petition and exhibits attached thereto. It is triable on the face of the papers. See Trumbaturi v. Katz Besthoff, 180 La. 915,158 So. 16, Rome v. London Lancashire Indemnity Co., 181 La. 630,160 So. 121 and other cases, too numerous to mention. In determining whether the exception is well founded, the court does not consider the evidence submitted in support of the petition, except in cases where the exception is filed after evidence has been taken and the allegations of the petition have been enlarged by such evidence which has been received without objection. See Bell v. Globe Lumber Co. Ltd., 107 La. 725, 31 So. 994; McQueen v. Tremont Lumber Co., La.App., 151 So. 683 and Anderson v. Harvey Jones, La.App., 154 So. 495. The rule may be different, with respect to an exception of no right of action, in certain cases where the plaintiff alleges that he is suing in one capacity and the proof shows that his right to sue in that capacity does not exist. But the trial on an exception of no right of action is vastly different from that on an exception of no cause of action because, where an exception of no right of action is interposed, the exceptor has the right to offer in evidence, in limine, for the purpose of showing that the plaintiff does not *Page 703 
possess the right he claims or that the right does not exist. See Soniat v. White, 153 La. 424, 96 So. 19; Schmidt v. Conservative Homestead Association, 181 La. 369, 159 So. 587; Duplain v. Wiltz, La.App., 174 So. 652 and La Casse v. N.O., T. M.R. Co.,135 La. 129, 64 So. 1012.
In the instant case, the defendants filed an exception of no right and no cause of action. An examination of the petition discloses that the exception is barren of any merit, either as to plaintiff's right or his cause of action, because plaintiff obviously has the legal right to sue defendants for the injuries sustained by his minor child and the facts set forth in the petition, taken as true, exhibit that plaintiff is entitled to recover, if he can sustain his allegations by proof. Therefore, there was no valid reason in this case for the maintenance of the exception. However, it seems to be the opinion of counsel for defendants that, in cases where the plaintiff is unable to prove the allegations of his petition, the exception of no right or cause of action may be used as a weapon to perform the same function as a demurrer to the evidence or a motion for a judgment on plaintiff's proof. This is error. Motions for judgment, directed verdicts and demurrers to evidence are procedural pleadings of the common law which are unknown in our system. See Williams v. Missouri Pac. R. Co., supra. And, they may not be invoked in Louisiana by disguising them with the label of exception of no right or cause of action. If the defendant doubts the sufficiency of the evidence submitted by plaintiff to sustain his demand and does not see fit to contradict the evidence which has been submitted, he unquestionably has the right to have the court determine the sufficiency of plaintiff's evidence by resting his case. In such instances, a judgment should be rendered on the merits in favor of one side or the other — but not on an exception of no cause of action — for that exception challenges the legality of the cause alleged and does not pertain to the trial on the merits.
For the foregoing reasons, we hold that the defendant's exception was improperly maintained. However, the discussion we have undertaken on this question has been to some extent of an academic nature in this case for the reason that, when the matter was being argued in this court, counsel for defendants stated to us that the case should not be remanded to the lower court in any event because their clients did not desire to offer evidence to refute plaintiff's proof and that they were willing to submit the case for final decision on the evidence produced by the plaintiff. And, at our suggestion, counsel stated that they would file a written stipulation in the record to the effect that they were agreeable to rest the defendants' case on plaintiff's evidence. Counsel have not filed the written statement as of the date of this opinion but, since they agreed during oral argument that the case would be considered submitted on plaintiff's evidence for final decision, the matter will be dealt with accordingly. Moreover, even though counsel had not been agreeable to the submission of the case, we would be constrained to treat defendants' exception, which was directed against the sufficiency of plaintiff's evidence after he had rested his case, as a final submission of the matter on its merits. And this, for the reason above stated, that the exception is tantamount to a motion for a directed judgment or a judgment on the face of the pleadings, which cannot be countenanced in Louisiana practice.
We therefore pass on to a consideration of plaintiff's evidence for the purpose of determining whether the trial judge was correct in concluding that the testimony adduced is insufficient to sustain the allegations contained in the petition.
On the question of the defendants' liability only one issue of fact is presented — that is, whether plaintiff's child fell from the balcony as a result of a defect in the balustrade, or banisters thereof, which was due to the defendants' failure to keep its building in repair. This is because the defendants admit the happening of the accident and pitch their defense on their denial that their premises were unsafe or that, if the balustrade was not in sound condition, the child's fall was attributable to the defect.
The accident happened at between 5 and 5:30 on the evening of August 13th 1940. Plaintiff's child, who was about three years old at the time, was on the second floor balcony, which is bordered by a balustrade about 3 feet high (judging from a picture of it which was offered in evidence by plaintiff), and fell therefrom a distance of approximately 14 feet to the pavement below. He was picked up by his mother in an unconscious state and brought to the Charity *Page 704 
Hospital, where he was found to be suffering from a skull fracture.
In support of his contention that the child fell through a hole in the balustrade, which resulted from the absence of one or more of the perpendicular banisters near or at the place where the child was standing, plaintiff produced, besides his own testimony, the following witnesses: Sargeam Clifford Reuter of the New Orleans Police Force, Edna Dupas and Louis Moreau, who were tenants in the building, Mrs. Maria Bartholomew, the mother of the child, Herbert Anese and Mrs. Ruth Meranto, also a tenant of the building.
Edna Dupas and Louis Moreau were not eyewitnesses to the accident. They, however, testified that defendants' building was in need of repair; that the balustrade through which the child is supposed to have fallen had a gap or hole therein approximately 15 inches wide, which was due to the fact that either one or two of the perpendicular banisters were missing, and that the balustrade had been in that condition for at least three weeks prior to the accident. Mrs. Dupas says that, on the day of the accident, she had placed a quilt over the balustrade at or near the place where the hole existed. Moreau and Mrs. Dupas further testified that, on the morning after the accident, defendants had the balustrade repaired by replacing the missing banisters.
Mrs. Bartholomew, the child's mother, states that she was an eyewitness to the accident; that, at the time it occurred, she was standing on the steps which lead to the balcony and was engaged in conversation with Mrs. Meranto, who was seated in the paved yard below; that, as she was talking to Mrs. Meranto, the little child, while walking on the gallery near the balustrade, fell through the aperture; that she rushed down the steps into the yard, picked up the prostrate child, who was unconscious and bleeding from one of his ears, and that, after bringing him to her room, she took him in an automobile to the Charity Hospital. She further states that the hole in the balustrade was due to the fact that some of the perpendicular banisters were missing; that this condition had existed for a few weeks prior to the accident and that, the day after the accident, the defendants sent their carpenters to make the necessary repairs.
The plaintiff testified that he was at work at the time the accident occurred; that he received a telephone message to come home and that, when he arrived there, the child had already been taken to the hospital. He says that he knew about the missing banisters and that the balustrade had been in that condition for sometime prior to the accident; that, on the morning after the accident, the defendants sent carpenters to the house and that they replaced the missing banister or banisters and secured the other banisters with wire. While on the witness stand, plaintiff identified a photograph which he had taken of the premises sometime after the accident and he pointed out on the picture the place where at least one new banister had been put in. This picture, which was offered in evidence, shows that the banister referred to by plaintiff is much wider than the other banisters of the balustrade.
Herbert Anese, a friend of the plaintiff, testified that he lives near the building on Chartres street; that he heard about the accident shortly after it happened and came immediately to plaintiff's home; that, upon his arrival there, he noticed the hole in the balustrade, which was due to the missing banister or banisters, and that he was present on the following morning when defendants' carpenters came to the premises and made the repairs.
Sargeant Clifford Reuter of the New Orleans Police Force stated that he and Patrolman Gervais were on duty in the vicinity of the accident at the time it occurred; that they received a radio call to report to the premises on Chartres street; that, upon reaching there around 7 p.m., they made an investigation and discovered that there were one or two banisters missing from the balustrade at or near the place where the child was supposed to have fallen; that, in conducting their investigation, they questioned Mrs. Ruth Meranto, who was residing in the property as a tenant; that she stated that plaintiff's child had been playing on the balcony with her two children and that plaintiff's child fell through a hole in the balustrade which had two banisters missing.
After the court heard the testimony of the foregoing witnesses (and others, whose testimony is of no importance except that of the doctors who treated the child), plaintiff called to the stand Mrs. Ruth Meranto who, according to her statement, was an eyewitness to the accident. It is clear to us from the record that, although Mrs. *Page 705 
Meranto had stated to the police shortly after the occurrence that she had witnessed it and although she signed a similar written statement to this effect in the office of counsel for plaintiff on September 9th 1940, the defendants had apparently contacted her before the trial and induced her to give testimony which would be beneficial to their case. This is obvious from the fact, as is shown by the record, that she attended the trial in company with one of the defendants, who had brought her to court in an automobile and that, prior to the trial, she visited the office of defense counsel. Plaintiff and his counsel were aware of the fact that Mrs. Meranto had become hostile to their cause and, therefore, it was with some apprehension that plaintiff's counsel placed her on the witness stand. However, we assume that counsel felt that, since it had been brought out in the evidence that Mrs. Meranto was an eyewitness, it was his duty to examine her. However, when he put her on the stand as a witness for plaintiff, he made it clear that he regarded her as a hostile witness and he confined his examination, for the most part, to the statement which she had given the police and the written declaration she had made in his office, in which she fully subscribes to and corroborates the testimony of the child's mother, Mrs. Bartholomew. When Mrs. Meranto was asked about these prior statements, she testified that she had lied; that, as a matter of fact, she did not see the accident; that no one in the apartment saw the accident; that the reason why she had lied, prior to taking the stand, was because she had a disagreement with her husband and that, since she and her husband had adjusted their differences, she wanted to tell the truth. On cross examination by defense counsel, Mrs. Meranto stated that, after the accident, the plaintiff promised her money to testify on his behalf; that plaintiff had also promised Mrs. Dupas and Mr. Moreau money for giving their testimony; that, as a matter of fact, neither she nor Mrs. Bartholomew saw the accident; that Mrs. Bartholomew was on the steps in a position where she could not see the accident; that the property of the defendants was in good condition and that the defendants were very prompt in attending to any necessary repairs.
A reading of the written reasons given by the trial judge for his maintenance of defendant's exception of no cause of action makes it quite clear that he was very much impressed with the testimony given by Mrs. Meranto at the trial. He states that he believes her testimony to be truthful and that the contrary statements made by her, shortly after the occurrence, are incorrect.
We are not in accord with these deductions. Conversely, we think that the record justifies the finding that, if Mrs. Meranto was bribed or was offered a bribe, the offer of the bribe was not made by the plaintiff, who is an impecunious laborer. The reason offered by Mrs. Meranto, for the complete diversion between the statements made by her shortly after the accident and her testimony on the stand, is that she gave the statements which she now brands as false because she and her husband had a quarrel and that, since they have made up, she wanted to tell the truth. But, we ask, what did the quarrel have to do with the facts of this case? Did the fact that she patched up her quarrel have any bearing upon her oath? She makes no attempt to explain this. All in all, her testimony taxes our credulity to such an extent that we shall disregard further consideration of her veracity except to say that we believe that the statement she gave to the police and her written statement made in the office of plaintiff's counsel are nearer the truth than the story she told on the witness stand. And, considering the nature of her evidence and the circumstances under which it was given, we apply the rule stated in Galt v. Travelers Insurance Co., La.App., 141 So. 105 and Passera v. United States Guarantee Co., La.App., 187 So. 345, which is that, where the prior unsworn statement of a witness contradicts sworn testimony later given on the stand, the court may, in the light of the facts, regard the prior statement as conclusive impeachment of, and entitled to greater credence than, the testimony given in open court.
It is also plain to us that plaintiff is not bound by the evidence given by Mrs. Meranto because she was put on the stand as a hostile witness and one the plaintiff was required to produce in view of the circumstances appearing in the case. See 70 Corpus Juris, Verbo Witnesses, Section 991, Page 795, Section 993, Page 796 and Section 1230, Page 1039.
In addition to the foregoing, even though we assume that the judge was justified in believing the sworn testimony of Mrs. Meranto, little weight should have been accorded to her evidence since she was Page 706 a self-confessed liar. Surely, by no stretch of legal reasoning, could her evidence be employed to destroy the unimpeached evidence given by plaintiff and the other witnesses testifying on his behalf.
We have scrutinized the plaintiff's evidence and that of his witnesses with care and we think that it is true. Hence, it is our opinion that it has been proved with certainty not only that the balustrade from which the child fell was in need of repair, by reason of the fact that one or more of the banisters were missing, but also that the child fell as a result of this defect. This conclusion seems warranted in view of the strong circumstantial evidence in the case and, aside from the testimony of the eyewitness, Mrs. Bartholomew, the picture of the premises reveals that the balustrade of the balcony is of such a height that it would be well nigh impossible for a three year old child to climb over it. Hence, the fact that the child fell, when coupled with the fact that it has been proven to our satisfaction that at least one banister was missing, makes it fairly evident that but for the missing banister the accident would not have occurred. In addition to this, there is the testimony of Mrs. Bartholomew, who witnessed the accident. Her statement is in complete accord with the physical facts of the case and we are unable to perceive any valid reason to question her veracity.
The trial judge, in his reasons for judgment, also remarks that he does not believe the testimony of Sargeant Reuter. This is because the police officer denied that, while on a visit to the premises shortly before the case came to trial, he had a conversation with Mrs. Meranto in which he threatened to put her in jail if she failed to verify the statement she made to him on the day of the accident. We concur with the judge in his appreciation of the officer's testimony as we think that it may be probable that the officer surpressed the fact that he endeavored to persuade Mrs. Meranto to substantiate her prior statement. However, if the evidence of the officer is considered as impeached and therefore is to be disregarded, the conclusion to be reached in the case is not affected in the least, since the statements given by the other witnesses for plaintiff fully sustain his right to recover.
We feel it necessary to comment on an unusual circumstance which occurred during the trial. On October 9th 1941, about three months before the hearing, counsel for the defendants were permitted to take the testimony of Jake Impastato, one of the defendants, because Impastato was being inducted into the United States Army. Impastato testified that the leased premises were in sound condition; that he regularly visited them about two or three times each week for the purpose of ascertaining whether anything was wrong; that he was there on the Saturday (or 3 days) before the accident and that the balustrade was in perfect condition and none of the banisters were missing. He further says that none of the tenants in the property made any complaint about the condition of the building prior to the accident. He admits, however, that certain repairs were made after the accident but says that these repairs had nothing to do with the balustrade or banisters.
When the case was on trial and plaintiff and his witnesses were testifying, counsel for plaintiff questioned these witnesses with respect to the veracity of the testimony of Jake Impastato. These witnesses, Mrs. Dupas, Mr. Moreau, Mrs. Bartholomew and the plaintiff, declared that Impastato had never visited the building prior to the accident and also contradicted his testimony as to the good condition of the building. Before plaintiff closed his case, his counsel offered in evidence the testimony of Impastato. Counsel for the defendants seem to be of the opinion that the effect of this offer was to make Impastato a witness for the plaintiff and that the latter is bound by his testimony. While it is to be observed that the offer made by plaintiff's counsel is most extraordinary, we do not think that it would be reasonable to conclude that plaintiff is bound by Impastato's testimony. If plaintiff's counsel was in error, the mistake is not vital or serious. Counsel probably felt that, since Impastato had already given evidence, it was necessary for plaintiff's witnesses to contradict his statement and his offer of the testimony was obviously intended to be for the limited purpose of showing that plaintiff's witnesses had established that Impastato was not telling the truth. In other words, since plaintiff's witnesses had been questioned about Impastato's statement, counsel evidently believed that his evidence should be in the record so that the court could consider whether it had been successfully rebutted.
Aside from this, even though it be conceded that plaintiff would ordinarily be considered as having produced Impastato *Page 707 
as his witness, it would not follow that plaintiff should be deprived of a judgment merely because Impastato denies the charges made in the petition or because his evidence is at variance with the other witnesses testifying in the case. After all, in matters of this kind, it is the duty of the court to ascertain the truth and a reading of the record has been sufficient to convince us that the defendants were guilty of negligence in that they failed in their duty to keep the building in repair. No question of contributory negligence is involved because it has not been pleaded and, even if it had, it could not be maintained, since a three year old child is not capable of negligence. Therefore, plaintiff is entitled to recover the damages resulting from the mishap.
The child was seriously injured, sustaining a fracture of the skull. He was rendered unconscious by the fall and remained in that condition for approximately an hour. Upon being brought to the Charity Hospital, his injuries were diagnosed as contusion of brain and fracture of the left parietal bone. He was bleeding from his left ear and spinal punctures revealed the presence of blood in the spinal fluid. After his arrival at the hospital, the child began to vomit, which continued, at intervals of 15 or 20 minutes, for a couple of days. He remained in the Charity Hospital for seven days, after which he was permitted to go home where he was confined indoors for approximately three weeks. Upon his return home, the child was treated by Dr. Harry Heiman, who made eleven visits to the house and thereafter saw him at his office on nine other occasions. On September 14th 1940, Dr. Heiman made a written report to counsel for plaintiff in which he stated that the child, at that time, was not apparently suffering any ill effects from the injury but that he was fearful that, because of the nature of the injury, the child might thereafter manifest convulsions or some other form of mental disturbance such as psychosis or epilepsy. In this report, Dr. Heiman advised the mother of the child to take extra precaution with him and "see that he should not be handled in any rough manner or play with any children roughly, because some serious complications may develop from the source."
Dr. Heiman recommended that the child be taken to Dr. H. Randolph Unsworth, a psychiatrist. Dr. Unsworth testifies that be saw the child on September 6th, 1940, February 27th, 1941, October 1st, 1941, and November 26th, 1941. His findings were to the effect that the child had received a cerebral injury from a fall "with behavior changes, — conduct changes, but was otherwise normal from the standpoint of organic neurology." Dr. Unsworth says that the injury sustained by the child might be the source of complications in the future and he testifies at great length with respect to the conditions which might develop.
It is our view that the opinions voiced by Drs. Unsworth and Heiman, as to the conditions which may develop in the future, are too speculative to warrant the conclusion that the injuries to the child are permanent. On the other hand, it is well recognized that a fracture of the skull is an extremely serious injury and, in cases involving adults, the damages recoverable for such an injury have been very substantial. However, in the case of a small child, where recovery has been speedy and no apparent ill effects result, the quantum of damage is necessarily smaller. We think that, in the instant case, the nature of the injuries suffered by the child are strikingly similar to those sustained by a little girl of the same age in the case of Terranova v. Home Owners Loan Corporation, 199 So. 166, where this court approved an award of the district court of $2,350. With that authority before us, and taking all of the facts of the case into consideration, we believe that an award of damages to plaintiff, for the use and benefit of the child, of $2,000 is adequate.
In addition to this, plaintiff is entitled to reimbursement for the doctors bills contracted by him for the treatment of the child to the extent of $100, which he prayed for in his petition. The bill of Dr. Heiman for his services was $51 and that of Dr. Unsworth $170.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Eddie Bartholomew, and against the defendants, Jake Impastato, Ignatius Impastato, Pecobio Impastato, Mrs. Mamie Impastato, wife of Anthony Cassisa, Mrs. Lena Impastato, wife of James Serio, Mrs. Mary Impastato, wife of Burns Garic, Mrs. Cecile (or Rosario) Lo Cicero, widow of Francesco (or Frank) Impastato, individually and as natural tutrix for the minors Rosalie Impastato, Leon Impastato and Frank Impastato, in solido, for the full *Page 708 
sum of $100 with legal interest thereon from judicial demand until paid, and that there be further judgment in favor of plaintiff, Eddie Bartholomew, for the use and benefit of his minor child, Calvin Bartholomew, and against the above mentioned defendants, in solido, for the full sum of $2,000 with legal interest thereon from judicial demand until paid, and all costs.
Reversed.